*In re* PETITION TO ANNEX CERTAIN TERRITORY TO THE VILLAGE OF ROUND LAKE PARK, LAKE COUNTY.—(GRAYSLAKE GELATIN COMPANY, Objector-Appellant.)

(No. 74-25;

Second District (2nd Division)—June 26, 1975.

*Rehearing denied July 22, 1975.*

Eva Schwartzman, of Libertyville, and Churchill & Baumgartner, of Grayslake, for appellant.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Lake County setting aside objections to a petition for annexation of the lands of the petitioner to the Village of Round Lake Park.

The objector, Grayslake Gelatin Company, an adjoining land owner, contends that the petition is invalid because (1) the petitioners have not sustained their burden of proving the lands sought to be annexed are contiguous to the Village of Round Lake Park and (2) the petitioners are not bona fide "owners" of the lands sought to be annexed, but are mere title holders who are grantees from a trust which previously held title to the land and are petitioners here merely for the purpose of qualifying the necessary percentage of owners to sustain the petition.

The land in question is long and relatively narrow, being 750 feet wide at the contiguous point and stretching south for well over a mile, then widening to approximately one-half mile in the southernmost half section. The objector, however, is not contesting the contiguity of the land in question to the Village of Round Lake Park on the basis of its shape, the irregularity of its borders or the narrowness of the point of contact with the Village. It simply contends that the filing of a map showing borders contiguous with the Village at one point 750 feet wide, without any other evidence, is not sufficient to establish a prima facie case of contiguity. The trial court considered the evidence presented sufficient to establish a prima facie case of contiguity and we are inclined to agree with this finding.

■■ We have examined the map in relation to the legal description of the property set out in the petition and we find it generally appears to correspond with the legal description. The map was filed with the petition to annex and indicates the territory in question to be contiguous to the Village of Round Lake Park at a point on its southern border. We do not think more is required of the petitioners unless the objector had come forward with some evidence casting doubt on the petitioners' allegation that the territory is contiguous. It did not do so and failed to show a lack of contiguity based on either the facts or the law. Appar-

ently, it is the theory of the objector that a prima facie case is destroyed by the simple fact of questioning it, but this is not so. A prima facie case may be rebutted but it stands as proven until some evidence is put forward tending to disprove it. The objector in this case introduced no evidence to show that the territory in question is *not* contiguous and the mere filing of the objection so stating has no effect on the petitioners' prima facie case. The objector had every opportunity to present evidence that the territory was not contiguous in fact or that it was not contiguous, within the meaning of the statute, but it totally failed to present any evidence, whatsoever, on either aspect relating to contiguity. Apparently the objector is arguing that the statute (Ill. Rev. Stat. 1973, ch. 24, par. 7—1—4), in stating that "[p]etitions so verified shall be accepted as prima facie evidence of such facts" only refers to the affidavit to the effect that the signatures on the petition represent a majority of the property owners of record and the owners of record of more than 50 percent of the land in the territory described and a majority of the electors of the territory therein described, but on the point of contiguity no prima facie case is established by the petition and map. Whether or not this is a valid argument, the fact that the statute does not actually say that a prima facie case is made as to contiguity by the filing of the petition, does not belie the fact that a prima facie case *was* so established in this case by the filing of the petition and the map, and the court so found. If the objector wished to contest the point it could have presented contrary evidence denying the contiguity of the territory. It did not, and the petitioners cannot be expected to answer objections not stated nor can the court's finding that the territory is contiguous be attacked without a showing that it is contrary to the weight of the evidence. It was an impossibility for the petitioners here to show that the finding was contrary to the weight of the evidence since the objector presented *no* evidence as to the contiguity and there was nothing to weigh. What the objector apparently is saying is that the court should have required *more* evidence of contiguity but it does not say how much more or what that evidence should have consisted of. Obviously, the statute was intended to give the trial court discretion in evaluating the sufficiency of the petition so long as the jurisdictional facts were set forth. We find the objector's contention that the mere filing of the objection required further evidence from the petitioners as to contiguity is without merit.

The objector also contends that the prima facie case of the petitioners that they are "owners of record" was overcome by the objector when the objector presented evidence that certain indicia of ownership were lacking as to these petitioners. The title to the land to be annexed was previously in a trust and the petitioners were grantees out of the trust. The

real estate agent who signed the petition was a grantee in one of the deeds and testified that the owners were all beneficiaries of the original trust. The objector argues that there is a difference between "owners of record"—and the phrase used in the statute—and "title owners of record"—which is how they described the petitioners. It said "owners" are persons who possess more than the mere legal title and it contends that the petitioners here did not possess the other ordinary indicia of ownership. It specifically refers in its brief to access to the property, the question of pro ration of taxes after the deeds were granted, the difficulty of the agent, who was also an owner, in identifying and locating his own parcel on the map, and the fact that no consideration is recited in the deeds from the trust to the individual petitioners, as being evidence of a lack of real ownership. The lack of these ordinary attributes of ownership, objector argues, is sufficient to refute the petitioners' prima facie case and to require further evidence of "ownership" to validate the petition. Therefore, it contends, it was error for the court to affirm the validity of the petition.

Two comments are in order as to this contention. In the first place, the distinction adverted to by the objector between "owners of record" and "title holders of record" is a self-serving distinction conceived for the purposes of this argument and while valid for certain purposes, and in certain instances, is not necessarily pertinent in this case, where such a distinction may not be relevant. The statute refers only to "owners of record" and we may take it that that phrase is intended in its ordinary and accepted sense as it was interpreted in *Warren v. Lower Salt Creek Drainage District*, 316 Ill. 345, and *Nicholson v. Village of Schaumburg*, 33 Ill.App.2d 197. In the latter case the court was considering a disconnection statute, which referred to "owners of record" and the court decided that the owner of an easement to farm the land after grantor had granted the fee to the Northern Illinois Gas Co. was still "owner of record" for purposes of the disconnection statute. The appellate court, however, after carefully reviewing the cases, concluded he was not, saying:

> "We conclude that the right of access and the unrecorded right to farm do not make plaintiffs Thord and Elva Nicholson the owners of record of the land in question to the exclusion of ownership in the Northern Illinois Gas Company, and that without the signature of that company the petition is not in compliance with the statute." (33 Ill.App.2d 197, 205.)

This clearly indicates the court's position that the right of access and the right to farm the land, while certainly being ordinary and accepted indicia of ownership, are not sufficient to meet the requirements of the phrase "owners of record." The court refers to the fee holder, Northern

Illinois Gas Company, as "the only owner of record" of the tract in question, although the Nicholsons owned the surrounding land and actively farmed the particular tract in question.

■■ It will be observed that the cases cited above were dealing with the question of who was *not* an "owner" and not with the interpretation of "owner of record" but it is clearly indicated in those cases that a record fee title owner *is* an owner of record. Even the cases cited by the objector, such as *Woodward Governor Co. c. City of Loves Park*, 335 Ill. App. 528, only indicate that in certain circumstances persons are considered as "owners" who are not owners of record. (See *Chapman v. County of Will*, 55 Ill.2d 524, where a contract purchaser was held to be an "owner".) However, no case we know of has held that a fee title owner under a recorded deed did *not* qualify as an "owner" or "owner of record," for the purposes of this or similarly worded statutes. Thus, while some persons under certain circumstances may be considered "owners" who are not fee owners, fee owners, where the deed is recorded, are always considered owners of record.

In the second place, however, the evidence of the petitioners' alleged lack of ownership is so superficial as to be most unpersuasive. It is alleged that lack of access is such an indication, but obviously persons own land that has no access—they may hold it for appreciation or waiting development of access—but in the meantime they are certainly owners if they have recorded title. The objector adverts to the fact that Mr. Simon, the agent for the other owners, was not able to point out the precise location of his particular tract on the small map, drawn to the scale of about 1½ inches to the mile, filed as Exhibit A. To deduce lack of ownership from this was patently absurd. As the judge remarked, "The map isn't refined enough * * * to show who owns what." All Mr. Simon was definite about was that he owned 40 acres in the shaded portion (the land to be annexed) of the map. To infer lack of ownership for the purposes of the annexation statute from this fact was farfetched and it was certainly not "evidence" that the deeds in question were a subterfuge.

There are three aspects of the objector's argument that relate to the fact of the previous trust ownership. These are that (1) there was a large mortgage on the property so that the individual owners actually had little equity in the property, (2) that there was no consideration shown on the deeds from the trustee to the grantees, and (3) the deeds were all recorded at the same time and shortly before the annexation petition was filed. We regard these as normal facts arising out of a previous trust ownership. While the objector implies that the fact of previous trust ownership creates in itself a need for scrutiny, we see no reason to suppose a trust in and of itself is a suspicious thing. The factors of lack of

consideration for the deeds from the trustee to the beneficiaries and the deeds being executed and recorded at the same time are also readily explainable as factors flowing from a previous trust ownership. These factors are entirely without significance as to bad faith or subterfuge. That the beneficiaries needed to establish their individual ownership by actual deeds to them from the trustee and therefore, at the same time, executed directions to convey in order to accomplish the desired annexation, is certainly not a suspicious circumstance. To imply that a person who was formerly a beneficiary of a trust is not acting in good faith under a petition to annex as an owner because other beneficiaries at the same time received individual deeds out of the same trust would certainly be an unwarranted conclusion. The simultaneous issuance of the individual deeds was a natural consequence of the decision by the beneficiaries to annex to the Village and no innuendo of subterfuge is justified by this fact. This is particularly true since in *People ex rel. Hart v. Village of Lombard*, 319 Ill. 56, one of the issues was whether the land trustee is a property owner under the annexation statute. The court in *Lombard* held that the trustee was an owner for the purpose of the annexation act and that the trustee should have signed the petition. The *Village of Lombard* case did not, however, settle the question of whether the signatures of the beneficiaries would be valid while the land was in the land trust. Therefore, in this case the beneficiaries with power of direction caused deeds to issue to the various beneficiaries, thus avoiding the question left unresolved in the *Lombard* case.

The existence of a large mortgage on the property is likewise irrelevant. It was apparently raised as indicating that the "owners" are not actually owners at all but obviously such an inference is not warranted, otherwise most ownership would be suspect. It is an irrelevant fact and has no evidentiary value in overcoming the petitioners' prima facie case.

An issue was raised as to the question of the petitioners actually being beneficiaries of the trust which previously held title to the land involved. The objector served notice on petitioners' counsel to take the deposit of the Harris Trust & Savings Bank, as follows:

*"NOTICE*

To: Edward R. Holmberg
25 No. County Street
Waukegan, Illinois

Please take notice that on the 31st day of August, 1973, at the hour of 10:00 A.M. the deposition of records of the Harris Trust & Savings Bk. will be taken before a notary public at 35 E. Wacker Drive, Chicago, Illinois in the above entitled cause. The above

deposition will be taken for the purposes of discovery and photo-copying of records and documents.

THERE WILL BE NO INTERROGATION OF THE DEPONENT.

Churchill & Baumgartner
Attorney(s)."

It will be noted that this notice does not specify any particular records or particular trust. The petitioners moved to quash the subpoena for deposition of records on the ground that the notice received did not refer to any specific land trust and any such records are immaterial and irrelevant under the wording of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—2), which only requires that the petitioners be shown to be owners of record, which had already been established. There is no indication in the record of an actual subpoena being issued pursuant to this notice. After hearing arguments on the motion to quash the trial court granted the motion "on the grounds that the records by which petitioners acquired title from the trust with Harris Trust & Savings Bank Trust No. 34652 are immaterial and irrelevant in that Petitioners are owners or title holders of record."

■■ Without substantial allegations throwing doubt as to the bona fides of the transaction, it does not appear that there would be any grounds for issuing a subpoena to the Harris Trust & Savings Bank to produce its records even if the notice had not been unduly broad. The trial court correctly held, in our opinion, that there was no proper basis for the subpoena inasmuch as the petitioners were "owners of record" as required by the statute and the records of the previous trust are irrelevant.

The objector cites the Second District case of *Scheuer v. Johns-Manville Products Corp.*, 330 Ill.App. 250. There the objectors filed objections to an annexation petition alleging that the petition was the result of a conspiracy and that subterfuge was used to acquire the necessary number of signatures to the petition. The county court upheld the objections. However in that case it was alleged that the petitioners were actually strangers to the title. The land had not previously, as here, been held by the petitioners as beneficiaries of a trust. In the case before us there is a logical explanation of the transaction which removes the inference of a sham transaction. Mr. Simon, agent for the petitioners and a petitioner himself, testified that the land had been held in partnership under a trust and the petitioners were the beneficiaries of such trust and received their individual deeds as such. Since this simple explanation removed any suspicion based on the factors alluded to by the objector, such as lack of consideration, simultaneous execution of the deeds, a large

general mortgage, and so forth, the petitioners' prima facie case was not thereby impaired. In the *Johns-Manville* case the court found evidence of fraud. In this case it did not so find and there is no parallel between the two cases.

■■ The objector contends that the witness Simon should not have been allowed to testify as to the previous trust and that the petitioners had been beneficiaries thereof, maintaining that the best evidence of that fact was the document itself and it should have been introduced into evidence. The court ruled, however, that the witness, being one of the beneficiaries and familiar with the names of the other beneficiaries of the trust, could testify as to the identity of the other beneficiaries of his own personal knowledge. We think this ruling was correct and that the situation was not subject to the parol evidence rule since evidence was not for the purpose of varying, altering or contradicting the terms of the written instrument, but simply for the purpose of identifying the parties to it. See *Beilin v. Krenn & Dato, Inc.*, 350 Ill. 284.

We conclude, therefore, that the objections are based on inadequate and irrelevant evidence as to lack of ownership and on incorrect conclusions of law as to the burden of proof under the annexation statute. We believe the trial court correctly ruled that the petition meets the statutory requirements and the objector did not overcome the prima facie case established by the petitioners.

The judgment of the trial court is affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.