(No. 70625.

*In re* PETITION TO ANNEX CERTAIN REAL ESTATE TO THE CITY OF JOLIET (Rex Steffes *et al.*, Appellants, v. Vulcan Materials Company *et al.*, Appellees).

*Opinion filed September 19, 1991.*

HEIPLE, J., took no part.

Codo, Bonds, Zumstein & Konzelman, P.C., of Joliet (Bruce M. Konzelman, of counsel), for appellants.

Thomas R. Wilson and Kenneth R. Carlson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee Vulcan Materials Co.

Robert H. Ellch, John M. Izzo and Stephen J. Klyczek, of Scariano, Kula, Ellch & Himes, of Chicago Heights, for appellee Laraway School District.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The six petitioners in this case, the Steffeses, filed their petition in the circuit court of Will County pursuant to section 7—1—2 of the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—2) seeking annexation of their property, and that of Vulcan Materials Company (Vulcan) and American Cyanamid Company (American Cyanamid), to the City of Joliet, Illinois. The petition requested "submission of the question of the annexation of said territory to the corporate authorities of the City of Joliet," averring, *inter alia*, that petitioners constitute "a majority of the owners of record of all the lands" to be annexed. Several entities filed objections, including Vulcan and American Cyanamid, both of which claimed that the petition had not been signed by a majority of the landowners in the area proposed for annexation, as is required by section 7—1—2 of the Code. The circuit court rejected this contention as well as others raised by the objectors, and ordered the question of annexation submitted to the corporate authorities of the City of Joliet for final action.

Vulcan appealed, and during the pendency of the appeal, the Appellate Court, Third District, allowed Laraway School District to intervene as an appellant-objector. At issue in the appellate court was the proper interpretation of the phrase, "majority of the owners of record," as used in section 7—1—2 of the Code. The objectors

contended that the six Steffeses, who were co-owners of a single tract of land, should be collectively considered as only one owner of record. The six petitioners, of course, claimed that they, as tenants in common, were each fee title holders and thus each owners of record. As such, they constituted a clear 6 to 2 majority of the "owners of record." The appellate court agreed with the objectors and reversed the judgment of the circuit court. (198 Ill. App. 3d 69, 73.) We allowed the Steffeses' petition for leave to appeal (134 Ill. 2d R. 315).

Petitioners' property is the farthest of the three tracts of land from the corporate limits of the City of Joliet. Vulcan's 75-acre tract is the only one of the three which is contiguous to the City of Joliet. American Cyanamid's 70-acre tract is contiguous to Vulcan's tract, but is not contiguous to the City of Joliet. Petitioners' 55-acre tract is contiguous only to American Cyanamid's tract. Petitioners need to force annexation of the intervening properties if they are to achieve the necessary contiguity of their own property for the purposes of annexation.

Prior to February 7, 1989, Union National Bank and Trust Company of Joliet held record ownership of the petitioners' 55-acre tract under trust number 3235. Rex Steffes, Dale Steffes, and Robert Steffes were the only beneficiaries of the trust. The beneficiaries, on February 7, 1989, caused the trustee to convey title to themselves and their wives as tenants in common. Later that day, the co-owners filed a petition to annex their 55-acre tract, and the two intervening parcels owned by Vulcan and American Cyanamid, to the City of Joliet. In the circuit court, Rex Steffes acknowledged that the transfer of title to the property had been undertaken to effectuate the annexation. It was apparently uncontraverted in the appellate court that the conveyance was "effected for the sole purpose of meeting the statutory require-

ment that the petition be signed by a majority of the owners of record of the territory sought to be annexed." 198 Ill. App. 3d at 71.

Section 7—1—2 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—2) provides that landowners may commence annexation proceedings by filing a petition "signed by a majority of the owners of record of land in such territory, and also by a majority of the electors, if any, residing in such territory." At issue in this appeal is the proper interpretation of the phrase, "majority of the owners of record," as used in the annexation statute.

> "The word 'owner,' as applied to land, has no fixed meaning which can be declared to be applicable under all circumstances and as to any and every enactment. It usually denotes a fee simple estate, [citations] but it has been defined to include one who has the usufruct, control or occupation of land with a claim of ownership, whether his interest be an absolute fee or a less estate." (*Coombs v. People* (1902), 198 Ill. 586, 588.)

For purposes of objecting to the alteration of a zoning classification, this court has held that purchasers under a contract are to be considered "owners." (*Chapman v. County of Will* (1973), 55 Ill. 2d 524, 531-32.) In an analogous situation involving drainage district dissolution, this court has held that the holder of a life estate and the owner of the remainder are both to be considered "owners" for purposes of the dissolution petition. (*Warren v. Lower Salt Creek Drainage District* (1925), 316 Ill. 345, 348-49; *Hull v. Sangamon River Drainage District* (1906), 219 Ill. 454, 458-59.) More to the point, this court has proceeded as if co-owners—assuming they are *bona fide* owners—could properly be counted as property owners in drainage district dissolution proceedings. *Cosby v. Barnes* (1911), 251 Ill. 460, 465.

The requirement of *bona fide* ownership has also figured in annexation cases. For example, in *Crocher v.*

*Abel* (1932), 348 Ill. 269, eight of the petitioning property owners had, "[w]ithin a comparatively short time before the petition was signed," caused their respective properties to be transferred to themselves and their spouses as joint tenants. It was claimed that the conveyances were made for the sole purpose of enabling the proponents of annexation to obtain the necessary number of signatures to the petition and that the spouses were not *bona fide* property owners and should not be counted among the petitioners. This court—implicitly holding both that the *bona fides* of the transactions were subject to judicial scrutiny and that joint owners might be counted as "owners"—determined that the *"bona fides* of the transactions was a question of fact, which [was] not reviewable on *certiorari."* (*Crocher*, 348 Ill. at 277.) Petitioners suggest that review of the *bona fide* nature of conveyances preceding the filing of annexation petitions can provide a safeguard against abuse of the annexation process. We agree. We will consider the *bona fide* nature of the conveyance in this case for annexation purposes later in this opinion.

We now turn our attention to *In re Petition to Annex Certain Territory to the Village of Round Lake Park* (1975), 29 Ill. App. 3d 651, a case which we find factually indistinguishable from the instant case and the reasoning of which petitioners urge us to adopt. In *Round Lake*, as in this case, title to the land to be annexed was previously in a land trust and petitioners had been beneficiaries of the original trust. As in this case, petitioners in *Round Lake* executed directions to the trustee to convey to them in order to establish their ownership and thus accomplish the desired annexation. The appellate court in *Round Lake* held that petitioners were fee title owners of the property in question and thus qualified as "owners of record" for purposes of the relevant annexation statute (Ill. Rev. Stat. 1973, ch. 24, par. 7—1—4).

(*Round Lake*, 29 Ill. App. 3d at 655.) The court also rejected the objectors' claims of bad faith and subterfuge in the transaction which proceeded the petition for annexation. Because we consider the question of bad faith and subterfuge to be dispositive in this case, we quote the relevant portion of the *Round Lake* opinion at length:

> "There are three aspects of the objector's argument that relate to the fact of the previous trust ownership. These are that (1) there was a large mortgage on the property so that the individual owners actually had little equity in the property, (2) that there was no consideration shown on the deeds from the trustee to the grantees, and (3) the deeds were all recorded at the same time and shortly before the annexation petition was filed. We regard these as normal facts arising out of a previous trust ownership. While the objector implies that the fact of previous trust ownership creates in itself a need for scrutiny, we see no reason to suppose a trust in and of itself is a suspicious thing. The factors of lack of consideration for the deeds from the trustee to the beneficiaries and the deeds being executed and recorded at the same time are also readily explainable as factors flowing from a previous trust ownership. These factors are entirely without significance as to bad faith or subterfuge. That the beneficiaries needed to establish their individual ownership by actual deeds to them from the trustee and therefore, at the same time, executed directions to convey in order to accomplish the desired annexation, is certainly not a suspicious circumstance. To imply that a person who was formerly a beneficiary of a trust is not acting in good faith under a petition to annex as an owner because other beneficiaries at the same time received individual deeds out of the same trust would certainly be an unwarranted conclusion. The simultaneous issuance of the individual deeds was a natural consequence of the decision by the beneficiaries to annex to the Village and no innuendo of subterfuge is justified by this fact." (*Round Lake*, 29 Ill. App. 3d at 655-56.)

Although we agree with the *Round Lake* court's conclusion that fee title co-owners should be considered "owners of record" for purposes of annexation statutes, we wholeheartedly disagree with that court's conclusion that the factual circumstances of that case—also in evidence here—are "entirely without significance as to bad faith or subterfuge." *Round Lake*, 29 Ill. App. 3d at 656.

A "record owner," as that term is commonly understood, means "the owner of the title" to the property. (Black's Law Dictionary 1106 (6th ed. 1990).) Thus, whoever else may be deemed to be an "owner," co-owners who share title to property should be considered "owners of record" as that term is used in annexation statutes. The statute passed by the legislature makes no distinction with respect to who should be considered an owner of record; therefore we will not impose a strained interpretation which would seem to conflict with the statements made in prior decisions of this court, merely to avoid what we perceive as substantial potential for abuse of the annexation process. Clearly, perceived injustice is what prompted the appellate court's interpretation in this case:

> "In construing a statute, it is presumed that the legislature did not intend unjust, absurd or unreasonable consequences. (*People v. Illinois Commerce Comm'n* (1983), 114 Ill. App. 3d 384.) If the trial court's interpretation of the term 'majority of the owners of record' is accepted, such consequences will result. Simply stated, anytime a record owner of one tract of land wishes to annex his property along with intervening parcels into a municipality, he will merely split ownership of his tract among as many family members, friends or straw men as is necessary to meet the signature requirement of an annexation petition. Just so in the instant case. The ownership of one 55-acre tract of land was divided among six family members, in order to force annexation of American Cyanamid Company (70 acres) and Vulcan Materials Company (75

acres) to the City of Joliet. This is unjust and unreasonable.

Therefore, this court chooses to interpret section 7—1—2 so that co-owners of one tract of land are to be collectively considered as only one owner of record." 198 Ill. App. 3d at 72-73.

Rather than place a strained interpretation on the term "owners of record," and one which has no basis in either the history of the statute or its language, we believe it is preferable, as petitioners suggest and as previous decisions of this court allow, to inquire into the circumstances surrounding conveyances accomplished immediately prior to the filing of the petition for annexation to determine if petitioners attempted to manipulate the statute in ways the legislature never intended. Although such an inquiry is normally one for the trial court, the state of the record in this case admits of no other conclusion than that petitioners attempted to manipulate the statute—as the appellate court found—by methods which should not be permitted.

The property at issue in this case was placed in a land trust and maintained in that state of title until the day of the filing of the annexation petition. The land trust, of course, is "a useful vehicle in real estate transactions for maintaining secrecy of ownership." (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 487.) Hence, even if Vulcan and American Cyanamid had inquired as to the "owners of record" of the property southwest of them, they would have learned only that the land was held in trust by a trustee. An examination of case law would have suggested that a trust is considered only one "owner of record." (See *People ex rel. Hart v. Village of Lombard* (1925), 319 Ill. 56, 59; *Department of Public Works & Buildings v. Kelly* (1976), 40 Ill. App. 3d 896, 903.) Vulcan and American Cyanamid had no way of knowing how many potential owners

of record were to their southwest preparing to commence annexation proceedings.

Clearly, petitioners took every precaution to make sure their neighbors were unable to thwart their desires for annexation. On the same day that the three beneficiaries caused the trustee to convey the property to themselves and their wives, they immediately filed the petition for annexation. The sequence and timing of these events leaves little doubt that events were orchestrated so as to make sure Vulcan and American Cyanamid could do nothing to stop the petitioners. Petitioners conceded in the appellate court that the change in title was accomplished solely for the purpose of meeting statutory requirement. Applying the reasoning of *Cosby* to this case (*Cosby*, 251 Ill. at 465), we hold that petitioners were disqualified from signing the petition—given the proximity of their conveyance to the filing of the petition and their judicial admissions—and their signatures should not be counted for purposes of commencing annexation proceedings at this time.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.