SECOND DIVISION
FILED: April 24, 2007

No. 1-05-3423

|  |  |
|---|---|
| | ) |
| WILLIAM C. EVANS, as Executor | )    APPEAL FROM THE |
| of the Estate of KEITH J. EVANS, | )    CIRCUIT COURT OF |
| Deceased, | )    COOK COUNTY |
|      Plaintiff-Appellant- | ) |
|      Cross-Appellee, | ) |
| | ) |
|      v. | )    No. 01 L 011514 |
| | ) |
| LIMA LIMA FLIGHT TEAM, INC, | ) |
| Individually; WILLIAM CHERWIN, | ) |
| LOU DRENDEL, JAMES J. MARTIN and | )    HONORABLE |
| JAMES O. MARTIN, Individually and | )    DONALD DEVLIN, |
| as Agents of LIMA LIMA FLIGHT | )    JUDGE PRESIDING. |
| TEAM, INC., | ) |
|      Defendants-Appellees- | ) |
|      Cross-Appellants. | ) |

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, William C. Evans, executor of the estate of Keith J. Evans, appeals from orders of the circuit court granting summary judgment in favor of the defendants, Lima Lima Flight Team, Inc. (Lima Lima) and its individual members, William Cherwin, Lou Drendel, James J. Martin (J.J. Martin), and James O. Martin (J.O. Martin), on the plaintiff's claims of negligence. The defendants cross-appeal from orders of the circuit court denying their motion for summary judgment based on the defense of assumption of the risk and denying J.O. Martin and Lima Lima's motion to transfer venue on the grounds of <u>forum</u> <u>non</u> <u>conveniens</u>. For the reasons which follow, we affirm the order of the circuit court granting summary judgment

No. 1-05-3423

in favor of the individual defendants, reverse the summary judgment granted in favor of Lima Lima, dismiss the defendants' cross-appeal, and remand this cause for further proceedings.

The plaintiff commenced the instant action, seeking damages as a consequence of the death of Keith J. Evans which occurred on October 1, 1999. Evans died as the result of an airplane crash during a practice session with Lima Lima, a Chicago-based formation flight team. Lima Lima performed for air shows throughout the country in restored, World War II era aircraft. Evans, J.O. Martin, and the other pilots were flying in a six-aircraft delta formation, performing a maneuver known as a "pop-top break," when the aircraft piloted by J.O. Martin and the aircraft piloted by Evans came into contact with each other, damaging Evans' aircraft and causing it to crash. Evans was killed instantly.

The plaintiff initially brought suit in the Circuit Court of Cook County, against J.O. Martin and Lima Lima, asserting a claim pursuant to the Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 2000)), and a survival action under section 27-6 of the Probate Act of 1975 (755 ILCS 5/27-6 (West 2000)). The initial complaint also named "Gene D. Martin," Cherwin, Drendel, Hank Krakowski, Stan Robinson, "Jim Martin," Ray Morin and United Airlines as respondents in discovery pursuant to section 2-402 of the Code of Civil Procedure (735 ILCS 5/2-402 (West 2000)). J.O. Martin filed,

-2-

and Lima Lima subsequently joined, a motion to transfer this case to the Circuit Court of DuPage County on the grounds of <u>forum non conveniens</u>, but the motion was denied. Thereafter, the plaintiff filed a motion to convert some of the respondents in discovery to defendants and for leave to file his first amended complaint, seeking recovery against the individual defendants and Lima Lima. The plaintiff's motion was granted in part, and Cherwin, Drendel and J.J. Martin were converted to defendants.[1]

The defendants filed a motion for summary judgment premised upon the doctrine of assumption of the risk, which the circuit court denied. Thereafter, the defendants filed a motion for summary judgment on all survival claims, asserting that Evans died instantly. The circuit court granted the motion.

The individual defendants moved for summary judgment on the remaining Wrongful Death Act claims, relying upon an exculpatory agreement signed by Evans on July 3, 1999. The agreement stated, in relevant part:

> "RELEASE/HOLD HARMLESS
>
> The undersigned Holder/Applicant of/for

---

[1]The plaintiff's motion to convert also included respondents in discovery Krakowski and United Airlines, but the motion was denied as to those parties. The order denying the plaintiff's motion to convert Krakowski and United Airlines was affirmed by this court in <u>Evans v. Lima Lima Flight Team, Inc.</u>, No. 1-02-2495 (March 31, 2003) (unpublished order under Supreme Court Rule 23), and they are not parties to this appeal.

the  X  Wingman, ___ Leader, ___ Check Pilot Formation Qualification Card hereby acknowledges, and attests to that he/she is an active member of at least one of the signatory organizations listed below.  As an active member of one of the signatory organizations, I hereby agree to be familiar with, and abide by, the Guidelines, Rules and Regulations established by the Confederation of Signatory Organizations known as F.A.S.T. ***  I further recognize that formation flight training and formation flying is inherently dangerous wherein there is a possibility of injury or death, and in consideration of my acceptance of this Formation Qualification Card/Evaluation, issued by participating Signatory Organizations I, for myself, my heirs, executor, administrators, and assigns do hereby release and forever discharge the Signatory Organizations listed below each and every one of them and F.A.S.T., its members, employees, suppliers, agents or representatives of and from any and all

claims, demands, losses, or injuries incurred or sustained by me as a result of instruction, training, attending, participating in, practicing for, and traveling to and from activities involving formation flights.

***

F.A.S.T. (A Corporation to be Formed)

Signatory Organizations (Holder/Applicant must check all applicable organizations): (1) ___E.A.A. Warbirds of America, (2) ___Confederate Air Force, Inc., (3) ___North American Trainer Association, (4) T-34 Association, Inc.[2], (5) ___Canadian Harvard Aircraft Association."

The circuit court considered the language of the exculpatory agreement as well as an affidavit by Cherwin, dated June 4, 2005, in which he averred that he, J.O. Martin, J.J. Martin, and Drendel were members of F.A.S.T. at the time of the accident. The circuit court granted the motion for summary judgment, finding that the exculpatory agreement was specific and definite enough to release the individual defendants from liability for Evans' death.

Lima Lima filed a subsequent motion for summary judgment,

---

[2]The T-34 Association option is circled.

maintaining that its liability was solely predicated upon the acts of the individual defendants and that, because all claims against the individual defendants had been dismissed, it was entitled to summary judgment as a matter of law. See Towns v. Yellow Cab Co., 73 Ill. 2d 113, 382 N.E.2d 1217 (1978). The circuit court granted Lima Lima's motion for summary judgment, and the plaintiff filed the instant appeal.

Lima Lima and the individual defendants filed a cross-appeal in which they challenged the circuit court's denial of their motion for summary judgment based upon the defense of assumption of a known risk. The defendants also appealed the circuit court's denial of J.O. Martin and Lima Lima's motion to transfer venue pursuant to the doctrine of forum non conveniens.

We first address the issues raised by the plaintiff's appeal. In urging reversal of the summary judgment in favor of the individual defendants, the plaintiff argues that a genuine issue of material fact exists on the question of whether the exculpatory agreement signed by Evans effectively released the individual defendants from liability for negligent conduct. We disagree.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000); Carruthers v. B.C. Christopher & Co., 57 Ill. 2d 376, 380, 313 N.E.2d 457 (1974). In

determining whether there exists a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file, construing the evidentiary material strictly against the movant and liberally in favor of the opponent of the motion. Purtill v. Hess, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). If a genuine issue of material fact exists, the motion for summary judgment must be denied. In re Estate of Hoover, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. In re Estate of Hoover, 155 Ill. 2d at 411. As in all cases involving summary judgment, our review is de novo. Outboard Marine Corp. v. Liberty Mutual Insurance, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

Although exculpatory agreements are not favored and are strictly construed against the party they benefit, (Scott & Fetzer Co. v. Montgomery Ward & Co., 112 Ill. 2d 378, 395, 493 N.E.2d 1022 (1986)), parties may allocate the risk of negligence as they see fit, and exculpatory agreements do not violate public policy as a matter of law. Platt v. Gateway International Motorsports Corp., 351 Ill. App. 3d 326, 330, 813 N.E.2d 279 (2004). An exculpatory agreement will be enforced if: "(1) it clearly spells out the intention of the parties; (2) there is nothing in the social

relationship between the parties militating against enforcement; and (3) it is not against public policy." Chicago Steel Rule & Die Fabricators Co. v. Travelers Indemnity Co. of Ill., 327 Ill. App. 3d 642, 645, 763 N.E.2d 839 (2002).

The plaintiff has made no argument that the social relationship between Evans and the individual defendants militates against enforcement of the exculpatory agreement. Rather, the plaintiff argues both that the language of the agreement does not clearly reflect the intention of the parties and that the agreement is contrary to public policy.

The plaintiff contends that the exculpatory agreement did not specifically name Lima Lima or its individual members, and, thus, the document is too indefinite to extinguish the individual defendants' liability. Contrary to the plaintiff's argument, however, an exculpatory agreement need not specifically name the individuals to which it applies. Poskozim v. Monnacep, 131 Ill. App. 3d 446, 449, 475 N.E.2d 1042 (1985). Rather, the exculpatory agreement may designate a class of beneficiaries covered under the agreement. Poskozim, 131 Ill. App. 3d at 449; see also Polsky v. BDO Seidman, 293 Ill. App. 3d 414, 422, 688 N.E.2d 364 (1997).

In the exculpatory agreement at issue in this case, Evans agreed to "release and forever discharge the Signatory Organizations listed below each and every one of them and F.A.S.T., its members,

employees, suppliers, agents or representatives." The agreement also states that F.A.S.T. is a confederation composed of five signatory organizations. The plaintiff maintains that it is the signatory organizations that are the "members" of F.A.S.T. exonerated by the exculpatory agreement. This interpretation, however, would render the phrase specifically releasing the signatory organizations superfluous. Contractual terms should be construed so as to avoid the conclusion that other terms are redundant. Forty-Eight Insulations, Inc. v. Acevedo, 140 Ill. App. 3d 107, 115, 487 N.E.2d 1206 (1986). Accordingly, we read the exculpatory agreement to include pilots who are "members" of F.A.S.T.

In determining whether the exculpatory agreement applied to the individual defendants, the circuit court relied upon an affidavit from Cherwin in which he identified all of the individual defendants as members of F.A.S.T. at the time of the accident. However, the plaintiff maintains that this evidence was inadmissable pursuant to the parol evidence rule, and, thus, the circuit court erred in considering it. Again, we disagree.

Under the parol evidence rule, extrinsic evidence is inadmissable to vary or modify the unambiguous provisions of a written contract. Main Bank of Chicago v. Baker, 86 Ill. 2d 188, 199, 427 N.E.2d 94 (1981). The affidavit by Cherwin was not

presented to vary or modify the terms of the exculpatory agreement, but merely to identify Cherwin and the other individual defendants as members of F.A.S.T. Consequently, consideration of Cherwin's affidavit was not barred by the parol evidence rule.[3] See In re Petition to the Village of Round Lake Park, 29 Ill. App. 3d 651, 658, 331 N.E.2d 602 (1975) (holding that parol evidence may be admitted for the purpose of identifying the parties to an agreement).

The exculpatory agreement lists F.A.S.T. as "a corporation to be formed." Therefore, when Evans signed the agreement, F.A.S.T. could not have had any members, as there was no entity to join. It follows that, if the class of beneficiaries covered under the exculpatory agreement is determined at the time the contract was signed, the members of F.A.S.T. cannot be identified. However, in his affidavit, Cherwin averred that the individual defendants were members of F.A.S.T. when the accident occurred. Accordingly, it

_____

[3]In a related argument, the plaintiff maintains that the circuit court erred in considering evidence which was inadmissable pursuant to the Dead-Man's Act (735 ILCS 5/8-201 (West 2002)). Under the Dead-Man's Act, an adverse party or person directly interested in an action, where a deceased person is represented, cannot testify on his own behalf regarding any conversation with the deceased or an event which took place in the presence of the deceased. 735 ILCS 5/8-201 (West 2002). The plaintiff, however, has failed to specify any particular testimony that was allegedly admitted in violation of this statute, instead merely referencing arguments made by the defendants before the circuit court. Consequently, we reject the plaintiff's argument that the Dead-Man's Act applies.

appears that F.A.S.T. was in existence on the date of the accident, and, therefore, its members are identifiable.

A beneficiary to a contract need not be named, identifiable, or yet in existence at the time the contract is executed. Bernstein v. Lind-Waldeck & Co., 153 Ill. App. 3d 108, 111, 505 N.E.2d 1114 (1987); Board of Education of Community School District No. 220 v. Village of Hoffman Estates, 126 Ill. App. 3d 625, 629, 467 N.E.2d 1064 (1984). It is sufficient that he or she be identified as a member of the class intended to be benefitted when the contract becomes operative. Altevogt v. Brinkoetter, 85 Ill. 2d 44, 55-56, 421 N.E.2d 182 (1981). The uncontradicted evidence establishes that the individual defendants were members of F.A.S.T. when the exculpatory agreement became operable, the date of the accident. Consequently, the individual defendants are clearly included within the class of beneficiaries covered by the agreement and are, thus, entitled to its protection.

The plaintiff also argues that the exculpatory agreement did not clearly and specifically exonerate the individual defendants from injuries caused by their negligent conduct. The plaintiff maintains that the language of the agreement, namely a release "from any and all claims" incurred as a result of participating in activities involving formation flying, was too broad and vague to notify Evans of the types of conduct from which he was releasing the

individual defendants.

The exculpatory agreement warned that formation flying is "inherently dangerous" and exempted members of F.A.S.T. from "any and all claims" sustained as a result of participating in activities involving such flying. The plaintiff argues that referencing the inherent dangers of formation flying demonstrates that the exculpatory agreement does not apply to negligent conduct. Citing to Bear v. Power Air, Inc., 230 Ill. App. 3d 403, 595 N.E.2d 77 (1992), the plaintiff contends that "inherently dangerous" only refers to "that type of danger which inheres in the instrumentality or the condition itself at all times thereby requiring special precautions to be taken with regard to it to prevent injury and does not mean danger which arises from mere casual negligence with regard to it under the particular circumstances." (Emphasis added.) Bear, 230 Ill. App. 3d at 409. This definition of "inherently dangerous," however, is used to determine whether to impose strict liability for ultrahazardous activities (Traudbe v. Freund, 333 Ill. App. 3d 198, 202, 775 N.E.2d 212 (2002)), or vicarious liability for the acts of independent contractors (Bear, 230 Ill. App. 3d at 409)), and, therefore, is inapplicable to this case.

An exculpatory agreement must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees

-12-

to relieve the defendant from a duty of care. Platt, 351 Ill. App. 3d at 330. However, the parties need not have contemplated the precise occurrence which results in injury. Schlessman v. Henson, 83 Ill. 2d 82, 86, 413 N.E.2d 1252 (1980). The injury must only fall within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties. Garrison v. Combined Fitness Center, Ltd., 201 Ill. App. 3d 581, 585, 559 N.E.2d 187 (1990).

Whether an injury accompanies a certain activity is ordinarily a question of fact, precluding summary judgment. Falkner v. Hinckley Parachute Center, Inc., 178 Ill. App. 3d 597, 602, 533 N.E.2d 941 (1989). In this case, however, we conclude, as a matter of law, that Evans' death fell within the scope of possible dangers ordinarily accompanying formation flying, namely a collision with another aircraft. See Goodlett v. Kalishek, 223 F. 3d 32, 38 (2nd Cir. 2000) (holding that the risk of a collision is plainly inherent in airplane racing). The exculpatory agreement clearly exempted members of F.A.S.T. from "any and all claims" sustained by Evans as a result of participating in activities involving formation flying. We find that the exculpatory agreement signed by Evans was not rendered unenforceably vague, although the precise occurrence which caused Evans' death might not have been foreseen. By adopting the broad language in the exculpatory agreement, the parties

-13-

contemplated the similarly broad range of accidents that might occur in formation flying. See Schlessman, 83 Ill. 2d at 86. Consequently, we reject the plaintiff's contention that the language in the exculpatory agreement did not clearly and specifically exonerate the individual defendants from liability for their alleged negligent conduct.

The plaintiff next argues that the exculpatory agreement violates public policy because it exonerates the individual defendants for injuries caused by their "unlawful conduct." Specifically, the plaintiff contends that, because J.O. Martin violated Federal Aviation Regulation 91.113 (14 C.F.R. § 91.113 (2006)) which required him to "see and avoid" Evans' aircraft, the exculpatory agreement should not be enforceable. The argument, however, is not well taken.

An exculpatory agreement will not be enforced where it is found to contravene or thwart public policy considerations. Foreman v. Holsman, 10 Ill. 2d 551, 554, 141 N.E.2d 31 (1957); Zimmerman v. Northfield Real Estate, Inc., 156 Ill. App. 3d 154, 165, 510 N.E.2d 409 (1989). The plaintiff argues that air safety is a matter of public interest, and, therefore, individuals cannot exculpate themselves from violating a federal aviation regulation.

The plaintiff contends that the collision resulting in Evans' death occurred because J.O. Martin violated Federal Aviation

Regulation 91.113. This regulation provides, in relevant part:

> "Right-of way rules:
>
> \*\*\*
>
> (b) General. When weather conditions permit,
> regardless of whether an operation is conducted
> under instrument flight rules or visual flight
> rules, vigilance shall be maintained by each
> person operating an aircraft so as to see and
> avoid other aircraft." (Emphasis added.) 14
> C.F.R. § 91.113 (2006).

Even assuming that J.O. Martin violated Federal Aviation Regulation 91.113 and that the violation caused the collision, enforcement of the exculpatory agreement at issue would not violate public policy. Generally, a violation of Federal Aviation Regulation 91.113 is treated as a breach of duty in a negligence action. See e.g., Steering Committee v. United States, 6 F.3d 572, 576-77 (9th Cir. 1993). Exculpatory agreements barring negligence claims are ordinarily enforceable and do not violate public policy as a matter of law. Platt, 351 Ill. App. 3d at 330.

Furthermore, we do not believe that enforcing the exculpatory agreement would endanger the public's safety. As the exculpatory agreement only releases other formation pilots and certain organizations from liability, the pilots would still be subject to

liability for injuries suffered by members of the general public or for property damage resulting from their negligent conduct. Therefore, the incentive to maintain proper operating procedures would remain. Consequently, we find that enforcement of the exculpatory agreement at issue does not violate public policy.

Based upon the foregoing analysis, we affirm that part of the circuit court's order granting summary judgment in favor of the individual defendants.

Next, the plaintiff contends that the circuit court erred in granting summary judgment in favor of Lima Lima because the amended complaint alleged independent acts of negligence on its part. The defendants maintain that the amended complaint merely sought to impose liability on Lima Lima based upon the actions of the individual defendants, and, because the individual defendants have been dismissed, Lima Lima is entitled to be dismissed.

When a suit is brought against a principal based solely on the negligent acts of its agents, and no independent wrong has been charged against the principal, the dismissal of the agents entitles the principal to be dismissed. Holcomb v. Flavin, 34 Ill. 2d 558, 565, 216 N.E.2d 871 (1966). However, where independent negligent acts have been alleged directly against the principal, the principal may still be liable although the agents have been dismissed. Marek v. O.B. Gyne Specialists II, 319 Ill. App. 3d 690, 701, 746 N.E.2d

No. 1-05-3423

1 (2001).

In his brief, the plaintiff contends that counts VII and IX of the amended complaint contain allegations of independent negligent conduct on the part of Lima Lima. However, the plaintiff has failed to present any argument in support of his contention. A point raised on appeal that is not argued or supported by citation to relevant authority is deemed waived. 210 Ill. 2d R. 341(h)(7); Brown v. Tenney, 125 Ill. 2d 348, 362, 532 N.E.2d 230 (1988).

The plaintiff also contends that counts I and V of the amended complaint asserted claims directly against Lima Lima. In these counts, the plaintiff alleged, in relevant part, that Lima Lima was negligent as it:

> "(h) Failed to have a prepared method of operation for aborting the maneuver if visual contact was lost; or
>
> (i) Failed to properly instruct the pilots on procedure upon loss of visual contact; or
>
> (j) Failed to alert pilots, including James O. Martin, regarding the proper procedures that day."

Counts I and V did not allege that Lima Lima's liability was solely vicarious. Rather, those counts alleged that the fatal accident occurred, in part, because of Lima Lima's own negligence in failing

-17-

to create and implement a proper procedure in the event that visual contact was lost.

The plaintiff's expert, Paul Krause, opined that Lima Lima's manual was inadequate in that it failed to provide specific guidance to pilots in the event of emergency situations, including a procedure during a loss of visual contact. Krause also opined that Lima Lima's lack of emergency procedures was a contributing factor in the accident which caused Evans' death.

Based upon the allegations of individual negligence on the part of Lima Lima set forth in counts I and V and Krause's opinions, we conclude that factual questions remain as to whether Lima Lima was negligent in failing to develop and implement a procedure upon the loss of visual contact and whether its alleged independent negligence was a proximate cause of Evans' death. For these reasons, the circuit court erred in granting summary judgment in favor of Lima Lima based solely on the dismissal of the individual defendants. See Marek, 319 Ill. App. 3d at 701.

In their cross-appeal, the defendants argue that the circuit court improperly denied Lima Lima's motion for summary judgment based upon the doctrine of assumption of the risk. The defendants also seek review of the circuit court's denial of J.O. Martin and Lima Lima's motion to transfer venue on the grounds of forum non conveniens. Initially, we address whether we have jurisdiction to

entertain the defendants' cross-appeal.

A party who has obtained all that has been asked for in the circuit court has no standing to appeal. Geer v. Kodern, 173 Ill. 2d 398, 413-14, 671 N.E.2d 692 (1996). In granting summary judgment in favor of the individual defendants and Lima Lima, the defendants received all the relief that they sought. Because the defendants obtained everything that they asked for in the circuit court, their cross-appeal must be dismissed. Material Service Corp. v. Department of Revenue, 98 Ill. 2d 382, 386, 457 N.E.2d 9 (1983); Wolfe v. Menard, Inc., 364 Ill. App. 3d 338, 347, 846 N.E.2d 605 (2006). However, as we may affirm the circuit court on any basis warranted by the record, the defendants need not file a cross-appeal to urge alternative reasons for affirming. Material Service Corp., 98 Ill. 2d at 386; Woodard v. Krans, 234 Ill. App. 3d 690, 699, 600 N.E.2d 477 (1992). Consequently, we will consider the issue of whether summary judgment in favor of Lima Lima is appropriate based upon the doctrine of assumption of the risk.

Traditionally, courts have classified the doctrine of assumption of the risk into three categories: (1) express assumption of the risk; (2) primary implied assumption of the risk; and; (3) secondary implied assumption of the risk. Hanke v. Wacker, 217 Ill. App. 3d 151, 158, 576 N.E.2d 1113 (1991). An express assumption of the risk is found where an individual has explicitly

agreed, in advance, to relieve another of a legal duty owed to him or her. Duffy v. Midlothian Country Club, 135 Ill. App. 3d 429, 433, 481 N.E.2d 1032 (1985). A primary implied assumption of the risk exists where the conduct of the parties indicates that an individual has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist. Russo v. Range, Inc., 76 Ill. App. 3d 236, 238, 395 N.E.2d 10 (1979). Finally, secondary implied assumption of the risk occurs where the defendant's negligence created a danger that was apparent to the injured party, who nevertheless voluntarily chose to encounter it. Duffy, 135 Ill. App. 3d at 433-34. As secondary implied assumption of the risk functions in a similar manner as contributory negligence, the introduction of comparative fault abolished this doctrine and it no longer operates as a complete bar in negligence actions. Duffy, 135 Ill. App. 3d at 435.

In this case, there is no written contract signed by Evans exculpating Lima Lima from liability; rather, the exculpatory agreement signed by Evans only applied to the individual defendants. Without such an exculpatory agreement, Lima Lima cannot rely on the doctrine of express assumption of the risk to relieve it of any duty owed to Evans.

We turn finally to the doctrine of primary implied assumption of the risk. Primary implied assumption of the risk requires that

the injured party knew of the specific risk which caused his or her injury.  <u>Russo</u>, 76 Ill. App. 3d at 239.  Whether a particular risk was appreciated is a question of fact.  <u>Falkner</u>, 178 Ill. App. 3d at 602.

In counts I and V of the amended complaint, the plaintiff alleged that the collision was caused, in part, by Lima Lima's failure to develop and implement a proper procedure in the event that visual contact was lost.  Based on the record before us, we cannot say, as a matter of law, that, when Evans participated in formation flying, he was aware of and accepted the risk that Lima Lima's emergency procedures were possibly inadequate.  We believe that questions of fact still remain as to whether Lima Lima's alleged failure to provide sufficient emergency procedures was a risk that Evans assumed.  Consequently, we decline to affirm summary judgment in favor of Lima Lima based upon the doctrine of assumption of the risk.

For the forgoing reasons, we conclude that the circuit court erred in granting Lima Lima's motion for summary judgment.

In summary, we affirm the order of the circuit court granting summary judgment in favor of the individual defendants, reverse the order of the circuit court granting summary judgment in favor of Lima Lima, dismiss the defendants' cross-appeal, and remand this cause to the circuit court for further proceedings.

No. 1-05-3423

Affirmed in part; reversed in part and remanded; cross-appeal dismissed.

SOUTH and HALL, JJ., concur.