2018 IL App (3d) 160713

Opinion filed May 18, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| CHICAGO TITLE LAND TRUST COMPANY, as Trustee and as Successor to North Star Trust Company, Successor to Harris Bank, Successor to First National Bank, Under a Trust Agreement Dated October 21, 1979 and Known as Trust No. 1689, by HENRY E. JAMES, the Holder of the Power of Direction and the Owner of the Beneficial Interest of the Land Trust, | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-16-0713 Circuit No. 15-MR-2972 |
| THE COUNTY OF WILL, a Body Politic and Corporate, THE WILL COUNTY PLANNING AND ZONING COMMISSION, an Agency of Will County, LENARD VALLONE, an Individual, BARBARA PETERSON, an Individual, KIMBERLY MITCHELL, an Individual, HUGH STIPAN, an Individual, SCOTT LAGGER, an Individual, MICHAEL CARRUTHERS, an Individual, and THOMAS WHITE, an Individual, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Roger D. Rickmon, |
| (Village of Bolingbrook, Intervenor-Appellee). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1     Plaintiff, Henry E. James, appeals from the trial court's November 17, 2016, order granting the Village of Bolingbrook's motion for summary judgment in plaintiff's *quo warranto* action against the Village of Bolingbrook. Plaintiff contends that the Village of Bolingbrook entered into a sham voluntary annexation agreement with an adjacent property owner in order to create contiguous boundaries to reach his property, in violation of Illinois annexation law and public policy. Further, plaintiff argues that the Village of Bolingbrook lacked statutory authority to involuntarily annex plaintiff's property because plaintiff's property was not "wholly bounded" by one or more municipalities at the time of the passage of the May 10, 2016, ordinance attempting to involuntarily annex plaintiff's property. We reverse and remand with directions.

¶ 2                                        FACTS

¶ 3     This case involves a *quo warranto* action to invalidate the involuntary annexation of plaintiff Henry E. James's land into the Village of Bolingbrook (the Village). Plaintiff is the beneficial owner of two separate land trusts, each containing a parcel of real property located in unincorporated Du Page Township, in Will County (collectively, the "James property").

¶ 4     One parcel consists of a 3.08-acre vacant lot (the "three-acre parcel"), situated along the Interstate I-55 south frontage road, east of Veterans Parkway. The other parcel consists of an approximately two-acre lot with a farmhouse (the "two-acre parcel").

¶ 5                    I. ComEd's Petition for Voluntary Annexation

¶ 6     On November 4, 2015, the Village's counsel drafted a letter to a senior real estate representative of Commonwealth Edison (ComEd), addressing the Village's proposal to voluntarily annex a parcel of land owned by ComEd (ComEd property). The Village's counsel explained that "[a]nnexing this property will allow the Village to annex the adjacent properties."

2

¶ 7    On February 29, 2016, ComEd submitted a petition for voluntary annexation pursuant to section 7-1-8 of the Illinois Municipal Code (65 ILCS 5/7-1-8 (West 2016)) to the Village. ComEd's petition requested that the ComEd property be annexed "subject to the satisfaction of the Conditions Precedent and the Condition Subsequent in the ComEd Annexation Agreement." ComEd also requested that the Village take such further action as may be necessary or appropriate to effect, in accordance with the law, the annexation of the ComEd property into the Village "only so long as it is subject to the Annexation Agreement."

¶ 8    On March 8, 2016, the Village approved the terms of the ComEd annexation agreement, referenced in ComEd's petition for voluntary annexation. The recitals to the approved ComEd annexation agreement state as follows, in relevant part:

> "At the request of the Village, ComEd has agreed to have the Property annexed to the Village as an accommodation to the Village and in reliance upon the representations and assurances of the Village, as documented herein, that (i) annexation of the Property will not result in any additional restrictions (including without limitation any municipal regulations) or any financial burdens of any kind or nature whatsoever being imposed by the Village or third parties on the ownership, use, and operation of the Property by ComEd or the ComEd Companies (except for generally applicable property tax levies, but not special assessments or levies attributable to special service areas), and (ii) the Village will fully and faithfully perform and observe during the term of this Agreement of all of the terms and conditions to be performed or observed by the Village hereunder."

Section 2B of the ComEd annexation agreement provided as follows:

"2B. <u>Conditions Precedent and Subsequent</u>. ComEd's obligation to execute and file the Petition described in Section 2A hereof and maintain it on file with the Village, and the annexation of ComEd's Property pursuant to the Petition and this Agreement are hereby expressly made conditional upon the occurrence or fulfillment of the conditions precedent set forth below. The conditions precedent (collectively the 'Conditions Precedent') are as follows:

\*\*\*

(b) The absence of any change in circumstances which in ComEd's reasonable judgment is likely to have a material adverse effect on ComEd or the ComEd companies.

(c) The absence of any change in circumstances which in ComEd's reasonable judgment obviates the need for the annexation of the Property by the Village in light of the Village's stated municipal objectives."

¶ 9 Immediately following the list of conditions precedent, section 2B of the ComEd annexation agreement provides as follows:

"In the event that each and all of the Conditions Precedent have not occurred or been fulfilled on or before June 30, 2016, this Agreement, at the option of ComEd exercisable by written notice to the City, shall terminate and ComEd shall have no obligation to file the Petition or consent to the annexation of the Property or any other portion of ComEd's property. The parties may extend the deadlines set forth in this Section by mutual assent without the necessity of amending this Agreement. Assent by the Village may be given by the Village Attorney or Senior

4

Administrator without additional authorization or direction from the Corporate Authorities."

¶ 10 According to section 3(b) of the ComEd annexation agreement, the ComEd property is not subject to any ordinances, regulations, or codes. Further, the Village expressly agreed not to permit any of the Village regulations to be applied or enforced against the ComEd property in section 3(c) of the ComEd annexation agreement "irrespective of the source of the Village's authority."

¶ 11 Section 5(a) of the ComEd annexation agreement provides, in relevant part:

"The Village hereby agrees to cooperate fully with ComEd and to exercise all reasonable efforts with the appropriate township assessor's office in order to ensure that the tax parcel(s) for the Property shall be classified for assessment purposes as vacant agricultural land or as any classification otherwise available for vacant land that results in the lowest possible assessed value."

Section 5(b) of the ComEd annexation agreement provides that "[t]he Village agrees to abate all taxes and assessments (other than generally applicable property taxes) that may otherwise be levied by the Village upon the [ComEd] Property."

¶ 12 As part of the approved ComEd annexation agreement, the Village agreed to waive any fees and charges that could be imposed on ComEd for annexations or for processing applications for zoning amendments in section 6 of the ComEd annexation agreement. Section 7 of the ComEd annexation agreement contains the Village's promise to indemnify ComEd from and against any and all losses, damages, and claims incurred by ComEd that arise from the annexation or from the disconnection of the ComEd property.

¶ 13    Section 10 of the approved ComEd annexation agreement, titled "Right to Disconnect," provides that ComEd may elect to disconnect from the Village all or any portion of the annexed property after one year has passed from the date of the property's annexation and if the disconnection of the property would not, under section 7-1-1 of the Municipal Code (65 ILCS 5/7-1-1 (West 2016)), disrupt the contiguity of the territory within the Village. Section 10 also provides that ComEd has a right to disconnect after six months from the date of the agreement if there is a territory immediately adjoining the ComEd property remaining under the jurisdiction of Will County and outside the boundaries of any municipality. Finally, section 10 states, in relevant part, that "[t]he Village will cooperate fully and in good faith to achieve such disconnection and will have no defense or objection to the form or substance of any action taken to effect such disconnection."

¶ 14                    II. Ordinance No. 16-019 Annexing ComEd Property

¶ 15    In addition to approving the terms of the ComEd annexation agreement on March 8, 2016, on the same date, the Village also enacted ordinance No. 16-019, titled, "Ordinance 16-019 Annexing Certain Territory to the Village for Commonwealth Edison Company Consisting of +5.12 Acres and Located South of I-55 and East of Veterans Parkway." Ordinance No. 16-019 provided, in relevant part:

> "WHEREAS, the Owner and the Village have entered into a valid and binding annexation agreement related to the Subject Property; and
>
> WHEREAS, all public hearings, submissions and other legal requirements have been accomplished in full compliance with the terms of said annexation agreement and with statutes of the State of Illinois and the ordinances of the Village of Bolingbrook[.]"

Section one of ordinance No. 16-019 declares that "[t]he Mayor and Board of Trustees find as facts the recitals hereinabove set forth." Ordinance No. 16-019 provides the annexation of the ComEd property was effective and in full force on the date the ordinance was passed on March 8, 2016.

¶ 16                          III. Involuntary Annexation of the James Property

¶ 17         On April 12, 2016, the Village enacted ordinance No. 16-033, titled "Ordinance 16-033 Authorizing Notice of Contemplated Involuntary Annexation of Certain Unincorporated Territory." Thereafter, notice was published in The Bugle, a newspaper of general circulation in Will County, not less than 10 days before the passage of the annexation ordinance. Not less than 15 days before the passage of the ordinance annexing the James property, the Village served written notice on the taxpayers of record for the property and gave all required notices to the applicable government bodies entitled to notice by statute.

¶ 18         On May 9, 2016, plaintiff sent a written objection to the Village. This written objection alleged that the Village's prior annexation of the ComEd property constituted a gross abuse of the annexation process because the sole purpose of the annexation of the ComEd property was to enable the Village to force annex the James property by manipulating the boundaries of the Village to create contiguity. The objection alleged the preceding annexation of the ComEd property, at the Village's request, violated Illinois public policy.

¶ 19         On May 10, 2016, the Village involuntarily annexed the James property into the Village by adopting and passing ordinance No. 16-047, titled, "Ordinance 16-047 Involuntarily Annexing Certain Unincorporated Territory." Ordinance No. 16-047 stated that the Village was proceeding under section 7-1-13 of the Municipal Code (65 ILCS 5/7-1-13 (West 2016)) to

7

annex unincorporated territory containing 60 acres or less that is wholly bounded by one or more municipalities.

¶ 20                                   IV. The *Quo Warranto* Action

¶ 21        On June 28, 2016, plaintiff filed his complaint in *quo warranto* in case No. 15-MR-2972 in the circuit court of Will County, contesting the involuntary annexation of the James property. On August 1, 2016, the Village filed a motion for summary judgment as to the complaint in *quo warranto*.

¶ 22        On August 1, 2016, plaintiff filed a motion for judgment on the pleadings in the *quo warranto* action. In the motion, plaintiff asserted that the James property was not wholly bounded by one or more municipalities on the date of the involuntary annexation on May 10, 2016. Further, plaintiff argued that the voluntary annexation of the ComEd property, a necessary precursor to the involuntary annexation of the James property, was a sham transaction that violated the purpose of the annexation statute and was contrary to public policy.

¶ 23        According to the Village's response in opposition to plaintiff's motion for judgment on the pleadings in the *quo warranto* action, filed on September 8, 2016, the Village sought to annex the ComEd property because "[t]he addition of the previously unincorporated ComEd property to the Village had the effect of wholly bounding the James property by municipal territory, thereby satisfying one of the prerequisites for involuntarily annexation" under section 7-1-13 of the Municipal Code (65 ILCS 5/7-1-13 (West 2016)).

¶ 24        Both parties agreed that the trial court should treat their motions as cross-motions for summary judgment. After the motions were fully briefed, the trial court heard arguments on the motions on October 7, 2016. At the hearing, plaintiff's counsel argued as follows, in relevant part:

8

"And what they've done here is they've created a total sham by giving Com Ed not [*sic*] a right to leave the Village or disconnect at any time after one year elapsed. So what they did was they didn't—and this is—they didn't naturally extend their boundaries, bring in a property that would be subject to their ordinances, and generate tax revenue for the, for the taxpayer.

What they did is they made an agreement to get the property that would wholly bound and force-annex our property by making an agreement that's clearly a sham.

\* \* \*

So what they did is they temporarily brought in a property owner, not into the Village, because it's really not in the Village. It's not subject to its ordinances. It's not zoned. It's not a taxpayer. And that is a complete sham.

And that invalidates the, the forced annexation because if you think about that, what are the implications of that? They could do—any village could then make any deal with anybody and let 'em walk later, and then force annex the property and extend its boundaries. And then after that property leaves, we're in the Village and we're force annexed against our will."

¶ 25    Next, the Village's counsel argued that "the terms of the annexation agreement [between the Village and ComEd] are not relevant for this Court to look at." Further, the Village's counsel stated, in relevant part:

"The courts aren't gonna get down on that. They're just gonna look at the face of the ordinance. Have the Article VII steps been properly taken? If they have, it's a valid annexation.

9

* * *

"So that's—counsel's doing his job, and doing an excellent at it, trying to throw some mud around and call this a sham and attribute evil motives on the Village, which clearly are not present. It's—I understand it's his job. Inappropriate to, to allege some sort of fraudulent activity, though [*sic*] those terms around. It is not appropriate.

It's a valid—we followed the Article VII steps to the T for both properties. And unfortunately for counsel, that's the end of the discussion."

¶ 26 In response to the Village's counsel's argument, the trial court commented, "I think what he meant to say was 'clever,' not 'fraudulent.' " The trial court later elaborated, "That's why I said 'clever.' It works."

¶ 27 The trial court took the matters under advisement until November 17, 2016. On November 17, 2016, the trial court granted the Village's motion for summary judgment and denied plaintiff's motion for judgment on the pleadings with prejudice. The trial court also made a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal of the decision. Plaintiff filed a notice of appeal on that same date, November 17, 2016.

¶ 28 ANALYSIS

¶ 29 The trial court granted summary judgment in favor of the Village concerning plaintiff's complaint in *quo warranto*. On appeal, plaintiff submits that the trial court's decision must be overturned because the undisputed facts reveal that ComEd did not have an independent desire to have its property annexed to the Village, but submitted the petition for voluntary annexation at the request of the Village. Plaintiff contends that the annexation of the ComEd property was a

sham proceeding desired by the Village, not ComEd, in order to fulfill the statutory requirements for the Village to go forward with the involuntary annexation of the James property once the James property was newly and "wholly bounded" by one or more municipalities, as required by section 7-1-13(a) of the Municipal Code. 65 ILCS 5/7-1-13(a) (West 2016).

¶ 30    Relying on the holding in *In re Petition for Annexation to the Village of Bull Valley*, 392 Ill. App. 3d 577 (2009), the Village requests this court to ignore any events that took place before March 8, 2016, the date the ComEd property was annexed to the Village, and focus solely on the legality of the Village's actions that took place after that date.

¶ 31    Summary judgment should be granted only where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 339 (2010). An appellate court reviews summary judgment orders *de novo*. *People ex rel. Alvarez v. Price*, 408 Ill. App. 3d 457, 461 (2011).

¶ 32    Our supreme court has stated: "It is fundamental that a municipality has no power to extend its boundaries unless and except in the manner authorized by the legislature so to do." *City of East St. Louis v. Touchette*, 14 Ill. 2d 243, 249 (1958). Hence, the outcome determinative issue in this appeal is whether evidence of subterfuge may be considered by this court in determining the validity of the ComEd annexation.

¶ 33    First, we observe that the trial court described the Village's course of conduct concerning the annexation proceedings as "clever" but "not fraudulent." We agree there is no evidence of fraud on the Village's part. However, we reject the Village's contention that this court may *not*

11

properly consider the Village's conduct prior to the March 8, 2016, annexation of the ComEd property because this approach is contrary to well established case law interpreting the plain language of section 7-1-3 of the Municipal Code (65 ILCS 5/7-1-3 (West 2016)) and section 7-1-4 of the Municipal Code (65 ILCS 5/7-1-4 (West 2016)).

¶ 34        Our supreme court, in *City of East St. Louis v. Touchettee*, concluded from a reading of the entire annexation statute that the statute contemplates "the filing of objections to the petition or ordinance for *any matter going to the validity thereof ***, as well as for the four specific objections set forth in section [7-1-3]." (Emphasis added.) *City of East St. Louis*, 14 Ill. 2d at 248. Moreover, Illinois courts have repeatedly and consistently considered evidence of subterfuge in determining the validity of a particular annexation. For example, in *In re Petition to Annex Certain Real Estate to the City of Joliet*, 144 Ill. 2d 284 (1991), our supreme court stated that it was appropriate for the court "to inquire into the circumstances surrounding conveyances accomplished immediately prior to the filing of the petition for annexation," which would allow the court to determine if the petitioners were "attempt[ing] to manipulate the [annexation] statute in ways the legislature never intended." *Id.* at 292. Additionally, courts have scrutinized the sometimes creative attempts of municipalities to annex property, particularly where these attempts are "merely a subterfuge to reach outlying areas." (Internal quotation marks omitted.) *People ex rel. Village of Forest View v. Village of Lyons*, 218 Ill. App. 3d 159, 166 (1991); see also *In re Petition to Annex Certain Real Estate to the City of Joliet*, 144 Ill. 2d at 290-92 (considering petitioners' alleged "bad faith and subterfuge" in determining the validity of an annexation); *People ex rel. Village of Long Grove v. Village of Buffalo Grove*, 160 Ill. App. 3d 455, 462 (1987) ("strip or corridor annexations, point-to-point touching, and cornering do not satisfy the contiguity requirement because they are merely a subterfuge to reach outlying areas").

Our supreme court has stressed that "[i]t is axiomatic that a party cannot circumvent the purpose of the [annexation] statute by doing indirectly what he cannot do directly." *In re Petition of the Village of Kildeer to Annex Certain Territory*, 124 Ill. 2d 533, 547 (1988).

¶ 35    In this case, the record contains undisputed evidence that the Village initiated contact with ComEd by letter on November 4, 2015, when the Village's counsel addressed the topic of voluntary annexation to a senior real estate representative of ComEd. In the letter, the Village's counsel explained that, "[a]nnexing this property will allow the Village to [involuntarily] annex the adjacent properties."

¶ 36    Thereafter, acting on the Village's desires, ComEd submitted a petition for voluntary annexation to the Village on February 29, 2016. However, this petition included a contingency that ComEd would seek voluntary annexation of ComEd's property into the Village "only so long as it is subject to the Annexation Agreement" to be considered by the Village on March 8, 2016. Importantly, the recitals in the approved ComEd annexation agreement, dated March 8, 2016, reveal both parties contractually agreed that ComEd's petition for voluntary annexation was a product of "the request of the Village" and undertaken by ComEd "as an accommodation to the Village."

¶ 37    In addition, the record does not contain any evidence or testimony establishing a basis for this court to conclude that ComEd had any independent interest to become a part of the Village. This fact alone distinguishes the facts of *Bull Valley* from the case at bar. *Bull Valley*, 392 Ill. App. 3d at 587. In *Bull Valley*, the property owners seeking voluntary annexation provided testimony in the trial court regarding their independent reasons for their request for voluntary annexation. *Id.* On this basis, the court in *Bull Valley* concluded the property owners, not the Village, had been the precipitating force for the voluntary annexation. *Id.* at 587-88.

¶ 38    Further, in *Bull Valley*, the property owners and the Village did not formalize their pre-annexation discussions into a formal written annexation agreement. Any caveats expressed by the property owners prior to the voluntary annexation proceedings in that case were withdrawn before the property owners submitted their petition to the Village in that case. *Id.* at 581. Here, unlike in *Bull Valley*, the Village and ComEd reached a formal written annexation agreement containing caveats and then referenced the formal, but contingent, agreement between the Village and ComEd as part of the voluntary annexation ordinance approved by the Village on March 8, 2016. These distinguishing facts render the Village's reliance on *Bull Valley* to be unpersuasive.

¶ 39    Having concluded that the existing case law allows this court to consider the circumstances prior to March 8, 2016, we focus on the undisputed language of the ComEd annexation agreement dated March 8, 2016. This approved formal agreement contained the Village's unusual promise not to tax ComEd or subject ComEd to the enforcement of the Village's regulations and zoning requirements once voluntary annexation occurred. It is even more curious that the Village also promised to allow ComEd to disconnect from the Village within one year after the annexation date, according to section 10 of the ComEd annexation agreement. Further, as evidence of the Village's true goal, we cannot ignore the undisputed fact that section 10 of the ComEd annexation agreement had the effect of allowing ComEd to disconnect from the Village in as little as six months if the Village was unsuccessful in force annexing the James property. This fact is very telling in our view.

¶ 40    Plaintiff argues public policy becomes intertwined in the issues raised in this appeal because disconnection is a matter of statewide concern. See *La Salle National Trust, N.A. v. Village of Mettawa*, 249 Ill. App. 3d 550, 577 (1993). In section 10 of the ComEd annexation

14

agreement, the Village agrees to "cooperate fully and in good faith to achieve such disconnection and will have no defense or objection to the form or substance of any action taken to effect such disconnection." Plaintiff relies on section 7-3-6 of the Municipal Code (65 ILCS 5/7-3-6 (West 2016)) to support the public policy argument by pointing out that the statutory scheme prohibits disconnection of less than 20 or more acres but ComEd agrees to not raise an objection if ComEd requests to disconnect the 5.12 acres.

¶ 41 As noted by Justice Holdridge in his dissent, this public policy argument is defeated by section 7-3-4 of the Municipal Code (65 ILCS 5/7-3-4 (West 2016)). Section 7-3-4 of the Municipal Code allows the corporate authorities of a municipality the discretion to disconnect an area of any size, including a 5.12 acre area, under certain circumstances. Thus, the Village's promise to cooperate fully by not raising a defense to disconnection of a parcel does not appear contrary to the statute. Nonetheless, ComEd's petition makes it abundantly clear that ComEd was not interested in pursuing voluntary annexation unless the Village could promise effortless future disconnection proceedings once the forced annexation of the James property became final.

¶ 42 Here, we conclude that the voluntary annexation of the ComEd property, subject to certain "clever" contingencies, represents a sham transaction created exclusively for the purpose of allowing the Village to reach the James property. On this basis, we ignore this sham transaction and conclude that the James property was not "wholly bounded" by one or more municipalities, as required by section 7-1-13 of the Municipal Code, on May 10, 2016, when ordinance No. 16-047 was adopted. Thus, the Village failed to meet its burden of proving compliance with section 7-1-13 of the Municipal Code at the time the ordinance purporting to involuntarily annex the James property was enacted. 65 ILCS 5/7-1-13 (West 2016).

¶ 43 Next, in the interest of a complete analysis, we address plaintiff's second argument on appeal regarding the premature enactment of ordinance No. 16-019 to voluntarily annex the ComEd property on March 8, 2016. In support of this argument, plaintiff submits section 2B of the ComEd annexation agreement included a timetable for certain contractual conditions that prevented the Village from taking any action on the ComEd annexation petition prior to June 30, 2016. Consequently, we focus on section 2B of the ComEd annexation agreement set forth below:

"In the event that each and all of the Conditions Precedent have not occurred or been fulfilled on or before June 30, 2016, this Agreement, at the option of ComEd exercisable by written notice to the City, shall terminate and ComEd shall have no obligation to file the Petition or consent to the annexation of the Property or any other portion of ComEd's property."

¶ 44 Based on the plain language of section 2B of the ComEd annexation agreement set forth above, we conclude that the ComEd annexation agreement did not become contractually binding on both parties until June 30, 2016, at the earliest. Therefore, we conclude that the voluntary annexation ordinance No. 16-019, which was subject to the terms of the ComEd annexation agreement, was prematurely approved by the Village in March 2016. The case law requires our court to treat the premature annexation of the ComEd property as a nullity. See *People ex rel. Village of Forest View*, 218 Ill. App. 3d at 164. Consequently, we hold that the undisputed facts do not establish the James property was "wholly bounded" by one or more municipalities on May 10, 2016, when ordinance No. 16-047 was adopted, as required by section 7-1-13 of the Municipal Code for an involuntary annexation. 65 ILCS 5/7-1-13 (West 2016).

16

¶ 45    Contrary to the Village's position on appeal, the continuity of boundaries cannot be established retroactively to justify a prior attempt to force annex a property. See *People ex rel. Hopf v. Village of Bensenville*, 132 Ill. App. 2d 907, 910 (1971) (holding that the burden is on the Village "to prove compliance with the statute at the time the annexation ordinance was passed"). We conclude that the subsequent fulfillment of the conditions of the preannexation agreement on June 30, 2016, did not relate back to March 8, 2016, in order to make the ComEd annexation effective.

¶ 46    Therefore, in light of our conclusion that the ComEd annexation was a sham transaction, we hold that the ComEd annexation is a nullity and cannot be used to create contiguous boundaries with the James property. In addition, we conclude that the annexation of the ComEd property was premature and ineffective because the conditions precedent to the ComEd annexation agreement had not occurred or been fulfilled. For these reasons, we conclude that plaintiff's property was not "wholly bounded" by one or more municipalities, as required by section 7-1-13 of the Municipal Code, at the time of the passage of the May 10, 2016, ordinance attempting to involuntarily annex plaintiff's property. Hence, ordinance No. 16-047, purporting to annex the James property, is a nullity. We reverse and remand to the trial court with directions to enter judgment in favor of plaintiff on his complaint in the *quo warranto* action.

¶ 47                                CONCLUSION

¶ 48    The judgment of the circuit court of Will County is reversed and remanded with directions.

¶ 49    Reversed and remanded with directions.

¶ 50    JUSTICE HOLDRIDGE, dissenting:

17

¶ 51 I dissent. In my view, the ComEd annexation and the Village's subsequent annexation of the James property were both valid and effective. None of the facts recounted by the majority suggests otherwise. The majority erroneously reverses the trial court's grant of summary judgment in favor of the Village on two separate grounds.

¶ 52 First, the majority concludes that the Village's annexation of ComEd's property was "invalid" because it was a "sham" transaction initiated by the Village for the sole purpose of facilitating the Village's subsequent annexation of the James property. In assessing the validity of an annexation, a reviewing court's sole function is to "determine whether the petitioners have complied with the procedures" prescribed by the legislature in the Illinois Municipal Code (Code) (65 ILCS 5/1-1-1 *et seq.* (West 2016)). *In re Petition to Annex Certain Territory to the Village of North Barrington*, 144 Ill. 2d 353, 361 (1991); see also *In re Annexation of Certain Territory to the Village of Deer Park*, 358 Ill. App. 3d 92, 100 (2005) ("Generally the court's role is limited in annexation proceedings to determining whether there has been compliance with the statutory requirements for annexation \*\*\*.").

¶ 53 In this case, it is undisputed that (1) ComEd voluntarily submitted a petition for annexation pursuant to section 7-1-8 of the Code (65 ILCS 5/7-1-8 (West 2016)), (2) the Village subsequently passed an ordinance to annex the ComEd property, as required by section 7-1-8 of the Code, (3) the Village subsequently passed a separate ordinance to involuntarily annex the James property, as required by section 7-1-13(a) of the Code (65 ILCS 5/7-1-13(a) (West 2016)), (4) the Village authorities published timely notice to the impacted landowners as directed by section 7-1-13(b) of the Code (65 ILCS 5/7-1-13(b) (West 2016)), and (5) the Village's annexation of the ComEd property, if effective, would have created contiguity with the James property sufficient to allow the Village's subsequent involuntary annexation of the James

18

property under section 7-1-13 of the Code. It is also undisputed that James had the opportunity to file objections to the Village's annexation of his property, and did so. Accordingly, the parties do not dispute that the letter of all the applicable statutory requirements were observed.

¶ 54     Nevertheless, James argued, and the majority holds, that the spirit of those statutory requirements was violated because the intent of the parties to the ComEd annexation agreement, and the Village's purpose in instigating that annexation, rendered the annexation invalid. Specifically, the majority concludes that the ComEd annexation was an invalid "sham" annexation because (1) the ComEd annexation proceedings were initiated by the Village, and ComEd agreed to voluntarily annex its territory to the Village purely as an "accommodation" to the Village; (2) there is no evidence suggesting that ComEd had "any independent interest to become part of the Village"; (3) the Village initiated the ComEd annexation solely to achieve contiguity with James property, which enabled the Village to involuntarily annex the James property; and (4) ComEd agreed to annex its property to the Village only upon certain conditions, including the Village's contractual agreement not to tax or regulate ComEd after the annexation and the Village's agreement not to object to ComEd's disconnection from the Village within one year of the annexation agreement (or within six months if the Village did not succeed in annexing the James property).

¶ 55     None of these facts renders the ComEd annexation invalid. When a landowner submits an annexation petition knowingly and of his own volition, as ComEd did here, the fact that a municipality instigated or encouraged the petition is of no legal significance. *In re Petition for Annexation to the Village of Bull Valley*, 392 Ill. App. 3d 577, 587 (2009) (rejecting the argument that an annexation petition signed by the appropriate landowners but "facilitated and encouraged by an interested municipality" may be considered valid "only if the landowners make first contact with the municipality," and ruling that "we see nothing in the Code to prohibit

19

a landowners' annexation petition, even if encouraged by a municipality that could not directly annex the subject territory, where the landowners voluntarily execute the petition"); see also *Deer Park*, 358 Ill. App. 3d at 100 ("it is difficult to conceive that the circuit court could *** deny an otherwise valid [annexation] petition merely because [a municipality] encouraged petitioners' efforts to secure annexation of the property"). The intentions of the parties to an annexation agreement (*i.e.*, a municipality's reasons for encouraging the annexation and a landowner's reasons for filing an annexation petition) *are legally irrelevant*. *Bull Valley*, 392 Ill. App. 3d at 587 (rejecting the argument that, for an annexation petition to be valid, the municipality encouraging or facilitating the annexation and the landowners must "have identical interests" and ruling that "[t]he process that led the landowners to their knowing and voluntary decision to execute the [annexation] petition has no relevance under the Code"). All that matters is whether the landowner knowingly and voluntarily submits an annexation petition and, if so, whether the statute's procedural requirements for voluntary annexation are met. As noted above, it is undisputed that each of these requirements were met in this case.

¶ 56    The majority further suggests that the ComEd annexation was invalid because the annexation agreement provided that the Village would not tax or regulate ComEd after annexation and would not object to ComEd's subsequent disconnection from the Village. However, none of these promises by the Village invalidated the ComEd annexation. To the contrary, the Code expressly authorizes a municipality to agree to such terms in an annexation agreement. See 65 ILCS 5/11-15.1-2(b), (e-5) (West 2016) (stating that an annexation agreement may provide for the abatement of taxes and the amendment of certain existing regulatory requirements). Moreover, the Code authorizes a municipality to consent to disconnection (65 ILCS 5/7-3-4 (West 2016)), and an annexation agreement may include an enforceable promise by a municipality to allow for disconnection if the conditions of the proposed annexation are not

20

met. *Elm Lawn Cemetery Co. v. City of Northlake*, 94 Ill. App. 2d 387, 393-94 (1968) (holding that a municipality's promise in an annexation agreement to allow for disconnection if an event contemplated by the parties did not occur was enforceable and did not render the annexation invalid). Thus, the promises the Village made in the annexation agreement did not flout either the letter or the spirit of the Code.

¶ 57        The majority further maintains that the Village's promise not to object to disconnection in this case was against public policy because section 7-3-6 of the Code authorizes the disconnection of territory within a municipality only if the territory contains 20 or more acres, whereas the ComEd territory at issue in this case contains only 5.12 acres. *Supra* ¶ 40. However, section 7-3-6 addresses land that is disconnected by court procedure, *i.e.*, without the municipality's consent. 65 ILCS 5/7-3-6 (West 2016). A different section of the Code (section 7-3-4) addresses land disconnected by corporate authorities (*i.e.*, disconnection with the consent of a municipality). 65 ILCS 5/7-3-4 (West 2016). The latter section gives a municipality the discretion to disconnect "any territory" within its boundaries and on its border (subject to certain procedural requirements) without regard to the size of the territory to be disconnected. Accordingly, the Village's consent to disconnection of the ComEd property in this case did not contravene the Code or otherwise violate public policy.

¶ 58        The cases upon which the majority relies are distinguishable. See *supra* ¶ 34. In each of those cases, the party seeking annexation engaged in some type of subterfuge or chicanery in order to circumvent statutory requirements or to thwart other landowners from blocking the annexation. See *In re Petition to Annex Certain Real Estate to the City of Joliet*, 144 Ill. 2d 284 (1991); *In re Petition of the Village of Kildeer to Annex Certain Territory*, 124 Ill. 2d 533 (1988); *City of East St. Louis v. Touchette*, 14 Ill. 2d 243 (1958); *People ex rel. Village of Forest View v. Village of Lyons*, 218 Ill. App. 3d 159, 166 (1991); *People ex rel. Village of Long Grove*

21

*v. Village of Buffalo Grove*, 160 Ill. App. 3d 455, 462 (1987). In each of these cases, the reviewing court held that one or more of the statutory requirements for annexation (*e.g.*, notice to affected landowners, contiguity, statutory limits on the size of the parcel to be annexed) were not satisfied. Here, by contrast, the Village acted transparently and complied with all applicable statutory requirements. It *did not* engage in trickery, manipulation, fraud, concealment, or subterfuge. The most the Village can be accused of doing is enticing ComEd to agree to annex its property to the Village in order to create contiguity with the James property so the Village could involuntarily annex the latter. As noted above, such enticement does not render the ComEd annexation invalid. Whether this conduct was good policy is a matter left to the municipality's discretion and is beyond the scope of this court's review.

¶ 59        As a second ground for reversal, the majority contends that the annexation of the ComEd property was "premature and ineffective" because the conditions precedent to the ComEd annexation agreement had not occurred or been fulfilled at the time the Village passed an ordinance to annex the ComEd property. See *supra* ¶¶ 43-46. I disagree. The ComEd annexation agreement provided that the conditions precedent to ComEd's obligations under the agreement could be satisfied at any time "on or before June 30, 2016" and that satisfaction of those conditions was based on ComEd's judgment alone. ComEd did not object when the Village passed an ordinance to annex the ComEd property on March 8, 2016. Nor has ComEd ever argued that the agreement's conditions precedent have not been fulfilled to ComEd's satisfaction. It appears that ComEd implicitly found the conditions precedent satisfied before June 20, 2016, as was its right under the agreement. Accordingly, neither the agreement, nor the ordinance which incorporated the agreement's terms, was invalid or ineffective.

¶ 60    For the reasons set forth above, I conclude that the Village's annexations of both the ComEd and the James properties were valid and effective. I would therefore affirm the trial court's grant of summary judgment in favor of the Village.