2026 IL App (2d) 250229-U
No. 2-25-0229
Order filed March 18, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

RPIL SOLAR 10, LLC and RLC VENTURES LLC, Plaintiffs-Appellants,

v. CITY OF AURORA, BNSF RAILWAY COMPANY, INTERNATIONAL CHURCH OF FOURSQUARE GOSPEL, and THE YOUHANAIE FAMILY TRUST, TRUST: TR3, C/O ANDREW YOUHANAIE & MARILYN YOUHANAIE, AS TRUSTEES OF THE TRUST, Defendants-Appellees.

Appeal from the Circuit Court of Kane County.
Honorable Kevin T. Busch, Judge, Presiding.
No. 24-MX-3682

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court erred in dismissing plaintiffs' *quo warranto* claim challenging defendant municipality's forcible annexation of property where plaintiffs alleged that property belonging to a public utility was owned in fee simple, so the public utility right-of-way exception to the contiguity requirement for annexation did not apply; (2) the trial court did not err in dismissing *quo warranto* claim challenging the voluntary annexation sought by defendant railroad company because plaintiffs did not allege sufficient facts to support conclusion that it was a "sham transaction;" and (3) the trial court did not err in dismissing defendant railroad company as an unnecessary party to the litigation.

¶ 2    Plaintiffs RPIL Solar 10, LLC (RPIL Solar) and RLC Ventures LLC (RLC) appeal the trial court's dismissal of their *quo warranto* action challenging defendant City of Aurora's (City) forcible annexation of approximately 41 acres in unincorporated Kane County, including a

property owned by RLC on which plaintiffs intended to develop a solar farm (the Solar Property), as well as property owned by defendants International Church of Foursquare Gospel (Church), and the Youhanaie Family Trust, Trust: TR3, c/o Andrew Youhanaie & Marilyn Youhanaie, as trustees of the trust (the Trust). Plaintiffs also assert a *quo warranto* claim challenging the voluntary annexation of property owned by defendant BNSF Railway Company (BNSF). For the following reasons, we affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4      The following facts are taken from plaintiffs' first amended complaint.

¶ 5      RPIL Solar leased the Solar Property from RLC. Beginning in 2023, RPIL Solar began a plan to develop the Solar Property into a ground-mounted community solar facility. The Solar Property is bounded to the north by a property within the City limits; to the east by the Church and a Kane County forest preserve; to the south by property owned by the Trust and BNSF's property; and to the west by a property owned by Commonwealth Edison (ComEd).

¶ 6      RPIL Solar had the Solar Property evaluated by civil and electrical engineers, designers, environmental consultants, and property valuation consultants. In April 2024, plaintiffs filed for a special use permit from Kane County because the site was zoned as a farming district. In May 2024, the City passed a resolution to file a written protest to the application.

¶ 7      On June 11, 2024, the Kane County Zoning Board of Appeals (ZBA) held a hearing on plaintiffs' application. The City's zoning and planning director, Ed Sieben, attended the hearing to voice the City's objection. He explained that the City's 2002 land use plan identified the Solar Property for residential development and the City still wished that the site be developed as such. However, Sieben admitted that during his 24 years with the City, no developer had expressed interest in developing the property and there were no current requests to develop the property. The

ZBA also heard from John Laesch, then a member of the City council and now the City's mayor, and Phil Silagi, the closest residential neighbor, who both supported plaintiffs' proposal. After the hearing, the ZBA voted unanimously in favor of recommending approval of plaintiffs' application.

¶ 8    On July 9, 2024, plaintiffs' application was presented to the full Kane County Board (Board) at a hearing. Seiben again voiced the City's opposition. He told the Board that BNSF filed a voluntary annexation petition and that the Solar Property was in the process of being forcibly annexed. The Board granted plaintiffs' application by a vote of 20-2.

¶ 9    On July 12, 2024, the City sent out a notice that it would consider the forcible annexation of the Solar Property, a property owned by the Trust, and a property owned by the Church (collectively, the Annexed Territory) at its next City council meeting on July 23, 2024. Plaintiffs alleged that the City did not disclose in this notice that "at some point" it convinced BNSF to seek voluntarily annexation of its property into the City. At the July 23, 2024, City council meeting, the City first passed an ordinance annexing BNSF's property, then passed an ordinance annexing the Annexed Territory. The City found that the Annexed Territory was wholly bounded by the City, a Kane County forest preserve, and the ComEd right-of-way, and that the annexation "will prevent the property from being used for a solar farm."

¶ 10    Based on these facts, RPIL Solar contacted the attorney general and Kane County state's attorney requesting that they bring a *quo warranto* action contesting the City's annexations. See 735 ILCS 5/18-102 (West 2022). Both offices declined to bring an action. On December 11, 2024, RPIL Solar filed an initial complaint for *quo warranto*, which included RLC as a defendant. On April 15, 2025, RPIL Solar moved for leave to file an amended complaint realigning RLC as a plaintiff, as well as seeking leave to file a claim for *quo warranto* under the *quo warranto* statute. See *id.* The trial court granted the motion. On May 5, 2025, plaintiffs filed their amended

complaint for *quo warranto*, alleging that the City's annexations did not satisfy the statutory requirements. Plaintiffs alleged that the Annexed Territory was not "wholly bounded" under the annexation statute (65 ILCS 5/7-1-13 (West 2024)) because the ComEd property was owned in fee simple and therefore does not fall within the "public utility right-of-way" statutory exception (*id.* § 7-1-1) to contiguity under *Board of Education of Richland School District No. 88A v. City of Crest Hill*, 2021 IL 126444. Plaintiffs also alleged that BNSF's voluntary annexation was a "sham transaction" under *Chicago Title Land Trust Co. v. County of Will*, 2018 IL App (3d) 160713.

¶ 11   The City moved to dismiss plaintiffs' amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 2-619.1 (West 2024)), arguing that plaintiffs failed to state a claim that the City's involuntary annexation failed to comply with Illinois law, that there is no basis to invalidate BNSF's voluntary annexation, that the complaint did not contain sufficient facts to support their contention that the BNSF annexation was a "sham transaction," and that plaintiffs lacked standing.[1]  The City did not specify which arguments were brought pursuant to section 2-615 of the Code (*id.* § 2-615) or section 2-619 (*id.* § 2-619).  BNSF also moved to dismiss the amended complaint under section 2-615, arguing that it was not a necessary party to the litigation and that the allegation that its voluntary annexation was a sham transaction was unsupported by specific facts.

¶ 12   On May 27, 2025, the trial court granted defendants' motions following a hearing. The trial court stated: "[*Crest Hill*] found no issue with the annexation, which is what we're dealing with today and it's for that reason that I believe your attempt to apply that case to this scenario is not analogous. I believe the City is 100 percent correct in their rights to have annexed the property

---

[1]The City does not argue on appeal that plaintiffs lack standing.

\*\*\*." The trial court did not address any other argument raised by the City or BNSF. Plaintiffs timely appealed.

¶ 13                                   II. ANALYSIS

¶ 14    Plaintiffs first argue on appeal that the trial court erred by dismissing their *quo warranto* claim alleging that the City's annexation of the Annexed Territory was invalid. *Quo warranto* is an "extraordinary remedy." *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 546 (2001). It began as a "writ of right for the crown against one who claimed or usurped any office, franchise or liberty, to challenge the authority underlying that assertion of the right." *Id.* at 546-47. *Quo warranto* proceedings are now codified in article 18 of the Code (735 ILCS 5/18-101 *et seq.* (West 2024)). When the attorney general or state's attorney fails to file suit, either on their own accord or upon the request of an interested party, that interested party, with leave of court, may file a *quo warranto* action. *Id.* § 18-102. A *quo warranto* action is the proper method of challenging a municipal annexation. *People ex rel. Ryan v. City of West Chicago*, 216 Ill. App. 3d 683, 690 (1991). Thus, a *quo warranto* proceeding may be brought against a municipality to call on it to show by what authority it has completed an annexation. *Id.* " 'It is fundamental that a municipality has no power to extend its boundaries unless and except in the manner authorized by the legislature so to do.' " *Chicago Title*, 2018 IL App (3d) 160713, ¶ 32 (quoting *City of East St. Louis v. Touchette*, 14 Ill. 2d 243, 249 (1958)).

¶ 15    "Because an individual does not have a right to file a *quo warranto* action, '[g]ranting leave to file a complaint in *quo warranto* is a matter within the sound discretion of the trial court.' " *People ex rel. Wofford v. Brown*, 2017 IL App (1st) 161118, ¶ 15 (quoting *People ex rel. Durst v. Village of Germantown Hills*, 51 Ill. App. 3d 969, 972 (1977)). Section 18-103 of the *quo warranto*

statute allows for motions directed at the pleadings, as in all other civil cases. 735 ILCS 5/18-103 (West 2024).

¶ 16      Section 2-619.1 of the Code allows a defendant to bring a combined motion under sections 2-615 and 2-619 and such a motion must be divided into parts that are limited to and specify the section of the Code under which the relief is sought. *Id.* § 2-619.1. "A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 23. "A section 2-615 or section 2-619 motion to dismiss admits as true all well-pleaded facts and all reasonable inferences from those facts." *Id.* ¶ 24. "When ruling on a motion to dismiss under either section 2-615 or section 2-619, a court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Id.*  A claim should not be dismissed on the pleadings "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Nyhammer v. Basta*, 2022 IL 128354, ¶ 23 (internal citations omitted) (as to § 2-615 motions); see *Pinkston v. City of Chicago*, 2023 IL 128575, ¶ 22 (same, for § 2-619 motions). Illinois is a fact-pleading jurisdiction and therefore "the court may not accept as true conclusions of law or fact unsupported by specific allegations of fact." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009).

¶ 17      We review the dismissal of a complaint under either section *de novo*. *Pritzker*, 2021 IL 126212, ¶ 24. In a *quo warranto* action, "it is enough to, in general terms, allege the defendant exercised the claimed rights without authority." *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 36 (1991). "Since the pleading requirements are extremely liberal under *quo*

*warranto*, and the defendant bears the burden of proof, trial courts are compelled to exercise great care when dismissing such actions at the pleading stage." *Id.*

¶ 18     Plaintiffs argue that the trial court's ruling was erroneous because ComEd's property, which plaintiffs alleged ComEd owns in fee simple, does not meet the definition of a "public utility right-of-way" under the annexation statute, which was a requirement for lawful annexation. See 65 ILCS 5/7-1-1 (West 2024). In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. The best indicator of the legislature's intent is the plain language of the statute. *Id*. The statutory language must be afforded its plain and ordinary meaning, and where the language is clear and unambiguous we must apply the statute without resort to further aids of statutory construction. *In re Michael D.*, 2015 IL 119178, ¶ 9.

¶ 19     As is relevant here, the annexation statute allows for a municipality to forcibly annex a property if that property is "wholly bounded" by one or more municipalities and a forest preserve district. 65 ILCS 5/7-1-13(a) (West 2024). The statute also states that "any territory to be annexed to a municipality shall be considered to be contiguous to the municipality notwithstanding that the territory is separated from the municipality by a *** public utility right-of-way ***." *Id.* § 7-1-1. Under these two provisions, the City purportedly annexed the Annexed Territory because it was "wholly bounded" by the City to the north, a forest preserve to the east, the City to the south (BNSF's newly-annexed territory), and ComEd's "public utility right-of-way" to the west.

¶ 20     In support their of argument, plaintiffs primarily rely on *Crest Hill*, 2021 IL 126444, ¶ 30. In that case, a municipality created a real property tax increment financing (TIF) district to fund a redevelopment project under the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11-74.4-1 *et seq.* (West 2018)). *Crest Hill*, 2021 IL 126444, ¶ 3. A strip of land owned by a

natural gas utility company separated the parcels of land to be included in the TIF district. *Id.* ¶ 5. A local school board challenged the TIF district because the parcels of property contained in the district were not contiguous, as required by the TIF Act. *Id.* ¶ 4. The municipality argued that the district was contiguous because the parcels making up the TIF district were separated by a public utility right-of-way. *Id.* ¶ 7. Our supreme court held that the municipality could not rely on the annexation statute's public utility right-of-way exception (65 ILCS 5/7-1-1 (West 2018)), which included the phrase "[f]or the purposes of this Article," as an exception to the contiguity requirement under the TIF Act. *Id.* ¶ 34. Thus, the court concluded that the parcels were not contiguous for purposes of the TIF Act. *Id.*

¶ 21    Plaintiffs here specifically rely on the *Crest Hill* court's explanation of the "public utility right-of-way" exception to the contiguity requirement under the annexation statute. Pursuant to that, plaintiffs contend that ComEd's property was not an easement or right-of-way because ComEd owned the property in fee simple. So, plaintiffs say, the Annexed Territory was not wholly bounded because the "public utility right-of-way" exception did not apply.

¶ 22    The City responds that plaintiffs' reliance on *Crest Hill* is misplaced because the case is distinguishable since annexation was not at issue. Aside from distinguishing *Crest Hill*, the City does not respond to plaintiffs' argument that ComEd's property is not a right-of-way. Rather, the City argues that because the property is owned by a public utility, it must be a public utility right-of-way.

¶ 23    While *Crest Hill* is distinguishable, its recitation of the well-established definition of a right-of-way is instructive and runs contrary to the City's argument. "It is settled that a right[-]of[-]way is an easement." *Kurz*, 407 Ill. at 385; *cf. United States Forest Service v. Cowpasture River Preservation Ass'n*, 590 U.S. 604, 613 (2020) ("A right-of-way is a type of easement."). This is

also recognized by Black's Law Dictionary, which defines "right-of-way" as "[t]he strip of land subject to a nonowner's right to pass through." Black's Law Dictionary (12th ed. 2024). The Black's Law Dictionary entry for "easement" similarly contains a definition for "utility easement," which states, "An easement that permits the entry or crossing of property to install, inspect, operate, and maintain utility infrastructure, such as a pipeline or powerline. – Also termed *utility right-of-way*." (Emphasis in original.) *Id.* This court has also previously recognized that "the term 'right-of-way' is synonymous with 'easement.' " *Diaz v. Home Federal Savings and Loan Association of Elgin*, 337 Ill. App. 3d 722, 730 (2002). Because the term has a long-established and widely accepted meaning, we determine that "public utility right-of-way" as used in the annexation statute means an easement.

¶ 24　　Here, plaintiffs allege that ComEd owns its property in fee simple. A fee simple is "an estate of inheritance without condition, belonging to the owner, and alienable by him or her or transmissible to his or her heirs absolutely and simply." *CNB Bank & Trust, N.A. v. Rosentreter*, 2015 IL App (4th) 140141-B, ¶ 133. A fee simple therefore connotes absolute ownership of a property, while a right-of-way is only the limited right to use a property for a certain purpose. Thus, ComEd's property would not be a "public utility right-of-way." Plaintiffs therefore adequately alleged a *quo warranto* claim based on the City's lack of statutory authority to annex the Annexed Territory, and we reverse the trial court's finding to the contrary.

¶ 25　　Next, plaintiffs argue that the trial court erred by dismissing their *quo warranto* claim alleging that BNSF's voluntary annexation was a "sham transaction." Illinois courts have repeatedly and consistently considered evidence of subterfuge in determining the validity of a particular annexation. *Chicago Title*, 2018 IL App (3d) 160713, ¶ 34. "[O]ur supreme court [has] stated that it was appropriate for the court 'to inquire into the circumstances surrounding

conveyances accomplished immediately prior to the filing of the petition for annexation,' which would allow the court to determine if the petitioners were 'attempt[ing] to manipulate the [annexation] statute in ways the legislature never intended.' " *Id.* (quoting *In re Petition to Annex Certain Real Estate to the City of Joliet*, 144 Ill. 2d 284, 292 (1991)).

¶ 26    In *Chicago Title*, the Village of Bolingbrook convinced ComEd to seek voluntary annexation so that certain other properties would be contiguous with the Village and enabling the Village to forcibly annex those properties. *Id.* ¶¶ 6-7.  In ComEd's petition for annexation, ComEd requested annexation "only so long as it is subject to the [a]nnexation [a]greement." *Id.* ¶ 7.  In the annexation agreement, the Village promised, for example, not to tax ComEd and not to enforce any zoning requirements or other regulations. *Id.* ¶ 10.  The agreement also allowed ComEd to disconnect from the Village after one year, or after six months if the forcible annexation was unsuccessful. *Id.* ¶ 13.

¶ 27    The appellate court concluded that the annexation of ComEd's property was a "sham transaction" because it was "subject to certain 'clever' contingencies" that were used solely for the purpose of forcibly annexing the other properties. *Id.* ¶ 42.  ComEd's petition made clear that it was not interested in annexation "unless the Village could promise effortless future disconnection proceedings once the forced annexation" became final. *Id.* ¶ 41.

¶ 28    Here, despite the low bar for *quo warranto* claims (*Daley*, 146 Ill. 2d at 36), plaintiffs' allegations fall short.  Other than asserting the voluntary annexation was a "sham," plaintiffs do not otherwise allege that the City did not meet the requirements for voluntary annexation under the annexation statute.  See 65 ILCS 5/7-1-8 (West 2024).  However, plaintiffs' allegations of a sham are significantly less than the circumstances found to be a sham in *Chicago Title*.  Plaintiffs merely alleged that the City "at some point" convinced BNSF to seek voluntary annexation, that

- 10 -

the purpose of the voluntary annexation was to prevent the solar farm, and that this subverted public policy in favor of renewable energy. Missing from the amended complaint, however, are any factual allegations of subterfuge by the City or any agreement between the City and BNSF that includes such "clever" provisions as in *Chicago Title*. This court has previously rejected the argument that a voluntary annexation merely "facilitated and encouraged" by a municipality is invalid and that nothing prohibits "a landowner's annexation petition, even if encouraged by a municipality that could not directly annex the subject territory, where the landowners voluntarily execute the petition." *In re Petition for Annexation to the Village of Bull Run*, 392 Ill. App. 3d 577, 587 (2009). Therefore, we affirm the trial court's dismissal of plaintiffs' *quo warranto* claim alleging that BNSF's voluntary annexation was a sham transaction.

¶ 29 That being said, however, our conclusion is based on plaintiffs' allegations and the information currently before the court. Further actions by the City, such as attempts to convince ComEd to seek voluntarily annexation of its property as a result of the outcome of this lawsuit, may be viewed differently.

¶ 30 Finally, plaintiffs argue that the trial court erred in granting BNSF's motion to dismiss because BNSF is an indispensable party. Given our determination that plaintiffs did not allege an invalid annexation of BNSF's property, we affirm the trial court's dismissal of BNSF as a defendant.

¶ 31                                III. CONCLUSION

¶ 32 For the reasons stated, we affirm the circuit court of Kane County's judgment dismissing plaintiffs' *quo warranto* claim based on the alleged invalid annexation of BNSF's property and the dismissal of BNSF as an unnecessary party. Additionally, we reverse the trial court's dismissal of

plaintiff's *quo warranto* claim based on the alleged invalid involuntary annexation of plaintiffs' property, and remand for further proceedings.

¶ 33    Affirmed in part and reversed in part; cause remanded.